**Patrick Aaron KENNEDY, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–02–376–CR.**

Court of Appeals of Texas,
Fort Worth.

March 30, 2006.

Wm. Reagan Wynn, The Kearney Law Firm, Jeffrey S. Stewart, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Helena F. Faulkner, James R. Hudson and Lloyd E. Whelchel, Asst. Crim. Dist. Attys., Fort Worth, for appellee.

## OPINION ON REHEARING EN BANC

LEE ANN DAUPHINOT, Justice.

On August 24, 2005, this court granted Appellant Patrick Aaron Kennedy's motion for en banc reconsideration and ordered this case resubmitted en banc. On December 16, 2005, we withdrew the majority opinion, dissenting opinion, and judgment of February 3, 2005. We substitute the following in their place.

A jury convicted Appellant of murder and assessed his punishment at twenty-seven years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly. Appellant brings nine points on appeal, arguing evidentiary errors, charge error, and improper jury argument. Because we hold that the trial court did not reversibly err, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of November 5, 2001, Ginny Ward stood outside Enterprise Rent-A-Car and observed Brandy Upchurch and Corey McMillan, the complainant, arguing in the adjoining parking lot of the Budget Inn. Ward testified that the complainant yelled at and shoved Upchurch; then Upchurch walked away from the motel. The complainant then began removing items from his first-floor motel room and loading them into his car, located directly outside.

About twenty minutes later, Ward watched a grey Mustang, driven by Matthew Schiffert, Appellant's uncle, and containing Appellant and Upchurch, drive slowly into the parking lot "like they were looking for somebody." Near the exit, Schiffert revved the car motor, drove back around the lot, hit a parked rental truck, and stopped five or six inches behind the complainant's car. Ward watched Appellant get out of the Mustang's front passenger seat and run up to the complainant, who stood up from the backseat of his car. According to Ward, the complainant was not holding anything and did nothing physical or aggressive toward Appellant. Appellant slashed at the complainant, causing him to back up. Appellant then returned to the Mustang, which sped off, but not before an Enterprise Rental Car employee wrote down its license plate number. The complainant then went to the front of his car while holding his neck and hollered for somebody to help him. Ward testified that her husband helped the complainant

to the ground and put his hands on the complainant's throat to try to stop the bleeding. The complainant died from two stab wounds, one in the left side of his neck and the other in the left side of his chest.

Police officers identified Schiffert as the owner of the Mustang, and Ward later picked Appellant out of a photo lineup. At trial, the trial court submitted the issue of self-defense to the jury.

## II. EVIDENCE AT THE GUILT/INNOCENCE PHASE

### A. Weapons Found in The Complainant's Room

In his fifth point, Appellant complains that the trial court erred by limiting defense counsel's questioning of a witness concerning weapons found in the complainant's room on the day he was killed and by excluding four photographs, defendant's exhibits 12–15. Defense exhibit 12 shows a knife on the floor of the complainant's room. Defense exhibit 13 shows a club on the table inside his room. Defense exhibit 14 shows the motel room's kitchenette. Finally, defense exhibit 15 shows a large picture of the room from the door and was offered to give the jury a perspective of the other exhibits. At trial, the defense sought to admit these exhibits three times: twice during the cross-examination of Detective Kevin Brown and again during Appellant's case-in-chief. In response to the first attempt, the State objected that the evidence was irrelevant because the crime occurred outside the motel and there was no evidence that anyone was near the room. Defense counsel replied that the

photos were relevant because Ward testified that the complainant had been going in and out of the room while loading items in his car, and because they showed what had been going on inside the room moments before and possibly after the stabbing. The trial court reviewed the photos and sustained the State's objection.

Later, after establishing that the complainant's door was wide open and a large pool of blood was found right in front of the door, defense counsel asked Detective Brown whether a person could have thrown a knife or other weapon inside the door of the complainant's room. The trial court sustained the State's speculation and relevance objections, but admitted the exhibits for purposes of the record. The record does not reflect what Detective Brown's response would have been had the questioning been allowed. Defense counsel attempted to introduce the exhibits again during its case-in-chief, and the State renewed its relevancy objection, which the trial court sustained.

By failing to make an offer of proof or file a bill, Appellant failed to preserve his complaint regarding the exclusion of Detective Brown's testimony.[1] In regard to the photographs, Appellant now argues that they were relevant to show that he acted in self-defense, to show the complainant's alleged violent character, and to show that the complainant was the first aggressor. Appellant failed, however, to offer these arguments to the trial court. Therefore, he has also failed to preserve his complaints regarding the photographs.[2] Accordingly, we overrule Appellant's fifth point.

---

1. *See* Tex.R. Evid. 103(a)(2); Tex.R.App. P. 33.2; *Fairow v. State*, 943 S.W.2d 895, 897 n. 2 (Tex.Crim.App.1997); *Chambers v. State*, 866 S.W.2d 9, 27 (Tex.Crim.App.1993), *cert. de-*

*nied*, 511 U.S. 1100, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994).

2. *See* Tex.R.App. P. 33.1(a); *Reyna v. State*, 168 S.W.3d 173, 178–80 (Tex.Crim.App.2005).

## B. Appellant's Vision

In his eighth point, Appellant complains that the trial court erred by limiting questions regarding his vision and by preventing his trial counsel from making a bill when timely requested. At trial, Appellant testified that he had "one good eye and one real weak eye." When defense counsel asked Appellant about the extent of the weakness, the State objected on relevancy grounds, and the trial court sustained the State's objection. Later, after both sides had rested but before the court's charge was read to the jury, defense counsel asked to proffer evidence regarding what Appellant's answers would have been to questions about his vision. The trial court denied the request, stating, "You're making a request for a bill, and I'm not going to grant it at this time.... You can file it by way of a bill later, if you wish to." The original record did not contain such a bill. Therefore, pursuant to *Spence v. State*,[3] we abated this appeal to the trial court for a hearing so that Appellant could properly perfect the record.

At the abatement hearing, the only evidence that Appellant offered was that he is legally blind in his left eye and has to wear a corrective lens to see with his right eye. Although we allowed supplemental briefing, Appellant failed to file a supplemental brief regarding the evidence presented at the abatement hearing, leaving us with only his contention in his original brief that "[b]ecause this is a situation where the [t]rial [c]ourt may have found the evidence to be admissible if the [c]ourt would have heard it, and the jury charge had not yet been read, this case should be reversed and remanded for a new trial." Because Appellant has not filed a supplemental brief explaining why the evidence about his vision warrants a new trial, he has received all the relief required by *Spence*.[4] Accordingly, we overrule Appellant's eighth point.

## III. JURY INSTRUCTIONS

### A. Lesser–Included Offense of Manslaughter

 In his first point, Appellant contends that the trial court erred by failing to instruct the jury on the lesser-included offense of manslaughter. The State acknowledges that manslaughter is a lesser-included offense of murder.[5] Therefore, this issue turns on whether there is some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser offense and not of the greater.[6] A person commits manslaughter if he recklessly causes the death of an individual.[7] A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.[8] Therefore, for a defendant to be entitled to a jury charge on manslaughter, the record must contain some evidence that the defendant did not intend to kill *and* that the defendant acted recklessly while ignoring a known risk.[9]

---

3. 758 S.W.2d 597, 598 (Tex.Crim.App.1988).

4. *See id.* at 600.

5. *See* Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 1981); *Moore v. State*, 969 S.W.2d 4, 8 (Tex.Crim.App.1998).

6. *Feldman v. State*, 71 S.W.3d 738, 750 (Tex.Crim.App.2002); *Moore*, 969 S.W.2d at 8.

7. *See* Tex. Penal Code Ann. § 19.04(a) (Vernon 2003).

8. *See id.* § 6.03 (Vernon 2003).

9. *See Munoz v. State*, 932 S.W.2d 242, 245 (Tex.App.-Texarkana 1996, no pet.).

Appellant was charged with and convicted of committing murder by intentionally causing serious bodily injury to the complainant, specifically, by stabbing him with a knife, which resulted in his death. According to Appellant, he was afraid that the complainant was trying to hurt Schiffert and Upchurch after the complainant allegedly ran toward Schiffert's car. Appellant testified that he exited the car with a knife, immediately showed the knife to the complainant, and told the complainant to go inside his motel room in an attempt to scare him off. According to Appellant, the complainant then grabbed him by the neck, and Appellant was unable to free himself, so he stabbed the complainant in the neck. Appellant then tried to pull back, but the complainant allegedly grabbed him with his other hand, and Appellant stabbed him again in the chest. Appellant stated that he never intended to cause death or serious bodily injury to the complainant. However, he also testified that he stabbed the complainant because he knew that the complainant was trying to hurt him and he wanted the complainant to let him go, and he admitted that he stabbed the complainant in highly vulnerable parts of the body.

Appellant's statement that he did not intend to kill the complainant must be examined in context.[10] Viewed in the context of the entire record, Appellant's testimony that he did not intend to kill the complainant refers to his intent when he originally pulled out the knife. Indeed, his intent was to scare off the complainant. But, instead of running away, the complainant, according to Appellant, grabbed Appellant around the neck. In fear for his life, Appellant stabbed the complainant in the neck. But, Appellant testified, the neck injury had no effect on the complainant, who then grabbed Appellant again, harder. This time, Appellant could not move, and the complainant seemed intent on really hurting Appellant. Out of fear, Appellant intentionally stabbed the complainant harder, but, again, without intent to kill him. Appellant testified as follows:

Q. But when he came at you and grabbed you by the neck?

A. I knew he was trying to hurt me then. He tried to—he just grabbed me real hard and I couldn't move away and I tried to but. And then that's why I cut him. I didn't want to cut him; I just did.

. . . .

Q. Why did you stab him?

A. I didn't want to stab him.

Q. Why did you?

A. Why did I stab him? Because he grabbed me and I couldn't pull away from him. I felt—I tried to pull away but I couldn't pull away. I thought he was going to break my neck. I just—I just reacted. I didn't want to.

Q. But you had to?

A. Yes.

This exchange, in context, describes self-defense, not manslaughter. Consequently, Appellant's testimony does not amount to evidence upon which a jury could rationally find that he *only* acted recklessly with respect to killing the complainant.[11] We hold that the trial court did not err by denying Appellant's request for a manslaughter jury charge. Accordingly, we overrule Appellant's first point.

**10.** *See Godsey v. State,* 719 S.W.2d 578, 584 (Tex.Crim.App.1986); *Martinez v. State,* 16 S.W.3d 845, 847 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd).

**11.** *Feldman,* 71 S.W.3d at 750; *Moore,* 969 S.W.2d at 8.

## B. Defense of Third Persons

In his second point, Appellant contends that the trial court erred by failing to instruct the jury on the defense of third persons. A defendant is entitled to an instruction on every defensive issue raised by the evidence regardless of the strength of the evidence.[12] A person is justified in using deadly force to protect another "[s]o long as the accused reasonably believes that the third person would be justified in using deadly force to protect himself."[13] Moreover, the actor must reasonably believe that his intervention is immediately necessary to protect the third person.[14]

Here, there is no evidence that Appellant reasonably believed that his use of deadly force was immediately necessary to protect Schiffert and Upchurch. On the contrary, Appellant admitted that neither Schiffert nor Upchurch was in immediate danger when he got out of the car with the knife. He testified,

Q. Were you—did you think he might do something to Brandy or your uncle?

A. I thought since he was running out, I just knew he was trying to do something to any of us.

Q. But when he came at you and grabbed you by the neck?

A. I knew he was trying to hurt me then.

Appellant admitted that the complainant appeared to be unarmed and that he never saw the complainant holding any type of weapon. Appellant also testified that he stabbed the complainant because the complainant was trying to hurt him. This evidence supports the trial court's decision to submit the issue of self-defense to the jury but does not support Appellant's claim of defense of third persons. The trial court, therefore, did not err by denying Appellant's request for a jury charge on the defense of third persons. We overrule Appellant's second point.

## C. Sudden Passion

In his third point, Appellant contends that the trial court erred by refusing to give a sudden passion instruction at punishment. If a defendant is convicted of murder, he may argue that he caused the death while under the immediate influence of sudden passion arising from an adequate cause, as Appellant did in this case.[15] If the defendant establishes sudden passion and adequate cause by a preponderance of the evidence, the offense level is reduced from first degree to second degree, and the ensuing punishment range is reduced.[16] Sudden passion is defined as a passion directly caused by and arising out of provocation by the individual killed, which arises at the time of the offense and is not solely the result of former provocation.[17] Adequate cause means cause that would produce a degree of anger, rage, resentment, or terror in a person of ordinary temper sufficient to render the mind incapable of cool reflection.[18] Therefore, a sudden passion charge should have been given if some evidence shows that Appellant's mental state rose beyond a bare

---

12. *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim.App.1997); *Golden v. State*, 851 S.W.2d 291, 295 (Tex.Crim.App.1993).

13. *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim.App.1986).

14. *See id.; see also* TEX. PENAL CODE ANN. §§ 9.32(a), 9.33 (Vernon 2003).

15. *See* TEX. PENAL CODE ANN. § 19.02(d) (Vernon 2003).

16. *See id.*

17. *See id.* § 19.02(a)(2).

18. *See id.* § 19.02(a)(1).

claim of fear to render him incapable of rational thought and collected action.[19]

According to Appellant, the complainant ran outside toward Schiffert's side of the car after Schiffert called and confronted the complainant on the phone while parked directly outside his motel room. Although Appellant testified that he was not aware that the complainant possessed a weapon and there is no evidence that the complainant said anything as he approached, Appellant decided to grab a knife that he remembered leaving in the glove compartment, exit the car, immediately brandish the weapon, and move toward the complainant while ordering him back into the motel room, in essence attacking him.[20] According to Appellant, the complainant reacted by grabbing Appellant's neck, and Appellant stabbed the complainant in the neck. When the complainant responded to being stabbed by grabbing Appellant with his other hand, Appellant stabbed the complainant in the chest.

■■■ Although testimony was presented raising the issue of self-defense, this alone does not entitle Appellant to a charge on sudden passion.[21] A defendant who first attacks another cannot claim the other's act of self-defense gave rise to adequate cause so that he was justified in killing him, even if he was acting under sudden passion after the other's act of self-defense.[22] Consequently, the trial court did not err by denying Appellant's request for

a jury instruction on sudden passion. We overrule Appellant's third point.

### D. Provocation

■■■ In his fourth point, Appellant argues that the trial court erred by instructing the jury as to provocation. As a general rule, the use of force against another in self-defense is not justified if the actor provoked the other's use or attempted use of unlawful force.[23] Provoking the use of force acts as a limitation or total bar on a defendant's right to self-defense.[24] Here, after the jury was instructed on the issue of self-defense, it was further instructed on provocation over Appellant's objection. The provocation charge reads in pertinent part,

> You are further instructed as part of the law of this case, and as a qualification on the law of self-defense, that the use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless the defendant abandons the encounter or clearly communicates to the other person his intent to do so, reasonably believing he cannot safely abandon the encounter; and the other person, nevertheless, continues or attempts to use unlawful force against the defendant.

■■■ The Texas Court of Criminal Appeals has held,

> A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some

19. *See Jones v. State*, 963 S.W.2d 177, 180 (Tex.App.-Fort Worth 1998, pet. ref'd).

20. *See Villegas v. State*, 791 S.W.2d 226, 239 (Tex.App.-Corpus Christi 1990, pet. ref'd).

21. *Jones*, 963 S.W.2d at 180.

22. *See Adanandus v. State*, 866 S.W.2d 210, 231–32 (Tex.Crim.App.1993), *cert. denied*, 510

U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994); *Villegas*, 791 S.W.2d at 239.

23. *See* Tex. Penal Code Ann. § 9.31(b)(4) (Vernon 2003).

24. *See Smith v. State*, 965 S.W.2d 509, 512 (Tex.Crim.App.1998).

words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.[25]

The exact words said or action taken by the defendant causing the attack need not be proven to the jury; rather the jury must merely be able to find that there were some provoking acts or words.[26] It will be enough if the evidence allows an inference beyond a reasonable doubt that the complainant attacked the defendant in response to something the defendant did or said.[27]

Here, Appellant was riding in a car that slowly entered the parking lot "like its occupants were looking for someone." Near the exit, the engine's motor revved, the car drove back around the lot, hit a parked rental truck, and stopped five or six inches behind the complainant's car. Appellant then got out of the car with a knife in his hand and moved toward the complainant, whom Appellant admitted appeared to be unarmed. These facts are some evidence from which the jury could conclude that Appellant provoked the difficulty. An act is reasonably calculated to provoke an attack if it is reasonably capable of doing so or if it has a reasonable tendency to cause an attack.[28] Here, there is evidence from which the jury could conclude that Appellant's actions, as detailed above, were reasonably capable of provoking the complainant to grab Appellant around the neck or had a reasonable tendency to cause such a response.

Whether Appellant intended to provoke the difficulty can only be determined from the circumstances surrounding the attack.[29] While Appellant testified that he did not go to the motel parking lot with the intention of confronting the complainant and that had he known that his uncle was going to confront the complainant, he would not have gone, he also testified that it was not customary for him to go with Schiffert to pick up Upchurch and that Upchurch informed them on the way to the motel that the complainant had "a bullet" for Schiffert. Also, Ward testified that she saw the car drive into the parking lot like its occupants were looking for someone and park five to six inches behind the complainant's car. Appellant admitted that they stopped behind the complainant's car, which was directly in front of the complainant's motel room, and Schiffert confronted the complainant over the phone by saying, "I'm looking at you right now[,] punk bitch." Finally, Appellant admitted that he exited the car only after he saw the complainant approaching the car without a weapon. The jury could have believed that Appellant's actions were the culmination of a plan to lure the complainant outside of his room. Because sufficient evidence exists on each element of provocation to allow a rational jury to find provocation beyond a reasonable doubt, the trial court did not err by instructing the jury on provocation. We overrule Appellant's fourth point.

## IV. IMPROPER CLOSING ARGUMENTS AT THE GUILT PHASE

In his ninth point, Appellant attacks numerous separate rulings by the

---

25. *Id.* at 513.

26. *See id.* at 515.

27. *See id.* at 516.

28. *Id.* at 517.

29. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex.Crim.App.1991).

trial court regarding the State's closing argument at the guilt phase. To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement.[30]

■ During its closing argument, the State argued the following regarding Schiffert's calling out the complainant before Appellant stabbed him:

[Prosecutor]: His uncle went and got him to pick [Upchurch] up. And recall what he said, that was not normal. May have done it once or twice before but it was not normal. Gee, man, I just happen to remember I got that knife in that glove box.... Gee, what a huge coincidence.... [W]e're making a slow turn through this parking lot to go get her clothes. Remember, he said, we're going to get her clothes. And, gee, what a huge coincidence[,] my uncle gets on the phone and calls the victim out. That's what he's doing, he's calling the victim out. What a huge coincidence.

[Defense]: Judge, I object, that's improper argument, and the State is arguing exactly what I argued in the charge conference at that point in time about provoking the difficulty. I object to that argument.

[Prosecutor]: I'll rephrase.

[Court]: Please.

[Defense Counsel]: And I'd ask the jury be instructed to disregard the last statement of the prosecutor.

[Court]: I'm going to deny it at this time.

[Defense]: I would ask for a ruling on my objection.

[Court]: Overruled.

■ Seconds later, the prosecutor made the same argument, Appellant's trial counsel objected on the same basis, and the trial court asked both sides to approach the bench, where the following occurred:

[Court]: You keep saying he and I don't know who you're talking about. When you say call who out.

[State]: Schiffert is who I was referring to.

[Court]: You're saying that—

[State]: Schiffert called him out and he's part of it because—

(Open Court)

[Court]: Okay. The objection is sustained.

[Defense]: I ask the jury be instructed to disregard the last statements by the prosecutor.

[Court]: You'll disregard references to Schiffert being involved in provoking the difficulty.

[Defense]: And I would ask for a mistrial at this time, Judge.

[Court]: Denied.

Generally, an instruction to disregard impermissible argument cures any prejudicial effect,[31] and Appellant fails to convince us otherwise regarding this complaint.

■ During the rebuttal closing argument, the other prosecutor argued, "It's not self-defense to go over there, have

**30.** *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim.App.1992), *cert. denied*, 510 U.S. 829, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim. App.1973).

**31.** *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex.Crim.App.2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001); *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim.App.), *cert. denied*, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2d 59 (1995).

somebody called outside to his death." However, instead of objecting on the same basis that the trial court had previously sustained, Appellant's counsel objected that the argument was outside the record. The trial court overruled the objection. Based on our review of the record, the State's argument that Schiffert called the complainant out was an appropriate summation of and reasonable deduction from the evidence.[32] Accordingly, the trial court did not err by overruling counsel's objection.

■ Appellant also contends that the State engaged in improper argument by characterizing him as "the biggest coward that walks the face of the earth." His objection that the argument was "improper argument; outside the scope of the evidence" was overruled by the trial court. On appeal, Appellant argues that the argument is "highly prejudicial, unsupported by the record, [and] inject[s] new and harmful facts into the case." Appellant relies on *Denton v. State*[33] out of this court. *Denton*, however, does not provide authority for Appellant's position; it is not a name-calling case.[34] Appellant cites no other authority for his argument. In the interest of justice, however, we note that Texas courts have upheld arguments calling a defendant an animal,[35] a fool,[36] vicious,[37] a liar,[38] a dog,[39] a cold-blooded killer,[40] a jerk,[41] a troublemaker,[42] and a one-man crime wave[43] and contending that a defendant "has no conscience, no heart, no recognition of right or wrong [and is] perched on the rim of hell, looking deep into it"[44] as reasonable deductions from the evidence in light of the facts of each case. In context of the entire record before us, the prosecutor's argument was a reasonable deduction from the evidence. Accordingly, the trial court did not err by overruling Appellant's objection. Finally, Appellant contends that the State engaged in improper argument by saying: "He stepped over—the guy that we've been heard [sic] [about] as being called noble, stepped over the man's body that he had just murdered." The trial court overruled Appellant's objection that the argument was outside the scope of the evidence. If the prosecutor meant the statement figuratively, it was not improper. If he meant it literally, the statement was outside the record, and the trial court erred by allowing it.

**32.** *See Felder*, 848 S.W.2d at 94–95; *Alejandro*, 493 S.W.2d at 231.

**33.** *Denton v. State*, 946 S.W.2d 607, 611 (Tex. App.-Fort Worth 1997, pet. ref'd) (op. on reh'g).

**34.** *See id.*

**35.** *Belton v. State*, 900 S.W.2d 886, 898 (Tex. App.-El Paso 1995, pet. ref'd).

**36.** *Vitiello v. State*, 848 S.W.2d 885, 888 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd).

**37.** *Ledesma v. State*, 828 S.W.2d 560, 563 (Tex.App.-El Paso 1992, no pet.).

**38.** *Adams v. State*, 813 S.W.2d 698, 700–01 (Tex.App.-Houston [1st Dist.] pet. ref'd).

**39.** *Garza v. State*, 783 S.W.2d 796, 800 (Tex. App.-San Antonio 1990, no pet.).

**40.** *Varvaro v. State*, 772 S.W.2d 140, 144 (Tex. App.-Tyler 1988, pet. ref'd).

**41.** *Cates v. State*, 752 S.W.2d 175, 177 (Tex. App.-Dallas 1988, no pet.).

**42.** *Duncantell v. State*, 563 S.W.2d 252, 258 (Tex.Crim.App.), *cert. denied*, 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (1978).

**43.** *Villarreal v. State*, 576 S.W.2d 51, 63 (Tex. Crim.App.1978), *cert. denied*, 444 U.S. 885, 100 S.Ct. 176, 62 L.Ed.2d 114 (1979).

**44.** *McKay v. State*, 707 S.W.2d 23, 36 (Tex. Crim.App.1985), *cert. denied*, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

■ Assuming that the prosecutor intended the comment that Appellant walked over the complainant's body to be taken literally, in light of the entire record, the statement had little prejudicial effect. The State did nothing to emphasize the allegedly erroneous comments, and the comment was a very small portion of the State's entire argument at punishment. Additionally, at the time of the argument, the jury could have either believed Appellant's version of the story and acquitted him because he acted in self-defense or accepted the State's version. The State contended that Appellant, participated in a calculated, premeditated scheme that involved calling the complainant out with the intent to make him vulnerable to being murdered and that Appellant did murder him. The evidence overwhelmingly supports the State's view of the murder. Applying the appropriate measure of harm,[45] we hold that any error associated with those comments was harmless. Accordingly, we overrule Appellant's ninth point.

## V. EVIDENCE AT THE PUNISHMENT PHASE

In point six, Appellant complains the trial court erred during the punishment phase by admitting evidence of his jail record.

During the punishment phase, Sergeant Donald Kraul of the Tarrant County Sheriff's Office testified regarding State's exhibit 15, a compilation of Appellant's jail records made by Tarrant County Jail ("TCJ") employees while Appellant was in their custody. Kraul testified that the rec-

ords were made and kept in the regular course of TCJ's business and that they were made by individuals who had personal knowledge about the events reflected in them. When the State offered the records into evidence, Appellant objected that, among other things, the documents were hearsay and did not fall within the public records exception of rule 803(8)(B) of the Texas Rules of Evidence because they concerned matters observed by police officers and other law enforcement personnel in a criminal case.[46] The State replied that it was offering the documents as business records under rule 803(6).[47] Appellant further objected that rule 803(6) should not serve to circumvent rule 803(8)(B) and cited the case of *Cole v. State.*[48] The trial court overruled the objection.

The twenty-two page jail records exhibit includes (1) Appellant's booking questionnaire, including "Receiving Officer's Observations," "Receiving Officer's Screening Guidelines for Mental Disability/Suicide Risk," and "Medical Staff Recommendation"; (2) Disciplinary Reports; and (3) Disciplinary Hearing Reports, including guilty pleas, findings of guilt, and punishments assessed. The records contain allegations of crimes and acts of misconduct. The records also show that Appellant was incarcerated from November 2001 through late June 2002.

■ Appellant asserts that the exhibit as a whole is hearsay under rule 803(8) and thus inadmissible under the business records exception found in rule 803(6). Specifically, Appellant argues that the decision in *Cole* renders his jail records inad-

---

**45.** *See* Tex.R.App. P. 44.2(b); *Martinez v. State,* 17 S.W.3d 677, 692–93 (Tex.Crim.App.2000); *Mosley v. State,* 983 S.W.2d 249, 259 (Tex. Crim.App.1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

**46.** *See* Tex.R. Evid. 803(8)(B).

**47.** *See* Tex.R. Evid. 803(6).

**48.** 839 S.W.2d 798, 806 (Tex.Crim.App.1992) (op. on reh'g).

missible under rule 803(8)(B) because they fall under the exclusion of matters observed by police officers and other law enforcement personnel.[49] The State relies on *Jackson v. State*.[50] The State's reliance is misplaced. *Jackson* pre-dates the Court of Criminal Appeals's original November 1990 opinion in *Cole v. State* and the opinion on rehearing from October 1992.[51] The opinion on rehearing clarified but did not substantially change the original opinion.[52]

Rule 803(8) provides an exception to the hearsay rule for the following:

Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth

(A) the activities of the office or agency,

(B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding in criminal cases matters observed by police officers and other law enforcement personnel;* or

(C) in civil cases as to any party and in criminal cases as against the state, factual findings resulting from an investigation made pursuant to authority granted by law; unless the sources of information or other circumstances indicate lack of trustworthiness.[53]

It is undisputed that the reports were made by law enforcement personnel pursuant to their official duties.[54] Consequently, under the plain language of rule 803(8)(B), the records are inadmissible hearsay. Further, rule 803(8)(B) is a limitation on rule 803(6) (the business records exception) as well as on rule 803(8) generally.[55] Rule 803(6) cannot be used to avoid the clear strictures of rule 803(8)(B).[56]

In addition to state rules and precedent, the Texas Court of Criminal Appeals has stated that we may look to federal cases, like *United States v. Cain*,[57] for guidance as to the scope and applicability of the Texas Rules of Evidence because our rules were patterned after the federal rules.[58] Specifically, because rule 803(8) is worded almost identically to its federal counterpart, Texas courts weigh federal precedent more heavily in applying this exception.[59] The reports in the case before us are inadmissible for precisely the same reasons that the *Cain* court held that the escape report made at a federal correctional institution was inadmissible.[60] They are reports of crimes and acts of misconduct reported to or observed by law enforcement personnel. They also reflect law enforcement personnel's rulings regarding culpability and the punishment imposed by law enforcement personnel.

49. *See* Tex.R. Evid. 803(8)(B); *see also Cole*, 839 S.W.2d at 811.

50. *Jackson v. State*, 822 S.W.2d 18, 30–31 (Tex.Crim.App.1990), *cert. denied*, 509 U.S. 921, 113 S.Ct. 3034, 125 L.Ed.2d 722 (1993).

51. *Cole v. State*, 839 S.W.2d 798 (Tex.Crim. App.1990), *reh'g granted*, 839 S.W.2d at 806 (Tex.Crim.App.1992) (clarifying original opinion and finding the State's motion for rehearing without merit).

52. *Cole*, 839 S.W.2d at 808, 810.

53. Tex.R. Evid. 803(8) (emphasis added).

54. *See id.*

55. *See id.; see also* Tex.R. Evid. 803(6).

56. *Cole*, 839 S.W.2d at 811.

57. *United States v. Cain*, 615 F.2d 380, 380–82 (5th Cir.1980).

58. *Cole*, 839 S.W.2d at 801.

59. *Id.* at 801–02.

60. *Cain*, 615 F.2d at 380–82.

The purpose of the disciplinary reports was to take disciplinary action against Appellant in an adversarial proceeding. This is the equivalent of an offense report that is to be used for the purpose of litigation. Rule 803(8)(B) is clear and unambiguous. As the *Cain* court unequivocally stated, evidence that is inadmissible under federal rule 803(8)(B) cannot be admitted into evidence through the back door as a business record under federal rule 803(6).[61] To hold otherwise in this state proceeding would allow clearly inadmissible evidence to be received through the same back door that the well-established law is designed to slam shut.[62]

The rule 803(6) business records exception does not overcome the mandates of rule 803(8)(B). We therefore hold that the trial court erred by admitting State's exhibit 15. We do not reach Appellant's remaining arguments concerning the records' inadmissibility.[63]

■ The erroneous admission of evidence is a nonconstitutional error which must be disregarded unless it affected a substantial right.[64] The background information and acts of misconduct contained in State's exhibit 15 involve violations of jail rules, fighting, possessing a razor blade, possessing tattoo paraphernalia, threatening a guard, and various punishment decisions after a finding that Appellant had indeed committed the complained-of violations. This information shows a propensity to commit violence and Appellant's refusal to moderate his behavior. The medical screening form also shows that Appellant used controlled substances and alcohol and had at least one juvenile arrest.

Our review of the other evidence in this case reveals the following. Tom Battle, Jr. testified that he knew Appellant when Appellant was fifteen or sixteen years old and attending the school where Battle was employed as a behavior interventionist. Battle described an incident in which Appellant knocked over some computer equipment during a computer class, swore at him, and struck him in the head.

Another witness, Leon Winchester, testified that on November 4, 2001, he participated with Appellant in the aggravated robbery of a woman and her pregnant daughter, Jodi Lohr, at a house in Fort Worth. Winchester claimed that he, Schiffert, and Appellant committed the robbery to steal drugs. According to Winchester, Appellant used a .357 magnum handgun during the robbery. Jodi Lohr testified that the perpetrators pointed guns at her and threatened to kill her and her mother.

Further, Appellant testified during the guilt phase of the trial that he stabbed the unarmed complainant in the neck and the chest, even though he could have left the scene. Appellant also stated that neither Schiffert nor Upchurch was in any immediate danger of harm from the complainant. Appellant additionally testified that he left the complainant at the scene to die. Additionally, Ginny Ward, an eyewitness to the murder, testified that as the complainant stood up from loading his car, she observed Appellant run up to him and stab him in the neck and chest. She stated that she did not see the complainant make any aggressive movements toward Appel-

---

61. *Id; see also Cole*, 839 S.W.2d at 811.

62. *See Cain*, 615 F.2d at 380–82; *Cole*, 839 S.W.2d at 811; *Willis v. State*, 2 S.W.3d 397, 401 (Tex.App.-Austin 1999, no pet.).

63. *See* Tex.R.App. P. 47.1.

64. *See* Tex.R.App. P. 44.2(b); *Mosley*, 983 S.W.2d at 259; *Coggeshall v. State*, 961 S.W.2d 639, 642–43 (Tex.App.-Fort Worth 1998, pet. ref'd).

lant. Finally, during its argument at the punishment phase, the State asked the jury to "start at fifty [years] and work [its] way up." The jury assessed punishment at twenty-seven years but could have assessed punishment of up to ninety-nine years or life.[65]

Applying the appropriate measure of harm,[66] we conclude that the error did not influence the jury or had but a slight effect on the punishment assessed.[67] We therefore conclude that the trial court's error in admitting State's exhibit 15 did not affect a substantial right of Appellant. Accordingly, we overrule Appellant's sixth point.

■ In point seven, Appellant complains that the trial court erred by admitting evidence of an extraneous offense at punishment because the evidence was legally insufficient to prove the offense beyond a reasonable doubt. Appellant's complaint involves the uncorroborated testimony of Leon Winchester, who testified that he, Appellant, and Schiffert committed an aggravated robbery on November 4, 2001. Appellant objected and informed the trial court that the State had not indicted Appellant for the offense because it could not corroborate Winchester's accomplice testimony and that without corroboration, the State could not prove the extraneous offense beyond a reasonable doubt. The State conceded that Winchester's testimony was uncorroborated, but argued that corroboration is not required at the

punishment phase. The trial court overruled Appellant's objection.

The trial court's decision to admit evidence is reviewed under an abuse of discretion standard.[68] Evidence of extraneous crimes or bad acts can be introduced during the punishment phase if it is shown beyond a reasonable doubt that the defendant committed them, even if they have not resulted in a conviction.[69] But article 38.14 of the Code of Criminal Procedure provides,

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.[70]

That is, the State cannot convict a defendant with accomplice testimony alone and must corroborate the accomplice testimony with other evidence tending to connect the defendant with the offense committed.[71] The statute says nothing about the use of accomplice testimony at punishment.

Although the Texas Court of Criminal Appeals has yet to determine whether article 38.14 applies to the punishment phase of a noncapital trial, it has held that corroboration is not required when the State offers testimony of an accomplice witness to prove (1) an extraneous offense at the punishment stage of a capital murder trial or (2) the use or exhibition of a deadly

65. *See* Tex. Penal Code Ann. § 12.32(a) (Vernon 2003)

66. *See* Tex.R.App. P. 44.2(b); *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

67. *See* Tex. Penal Code Ann. §§ 12.32(a), 19.02(c) (Vernon 2003).

68. *See Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997).

69. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 3(a) (Vernon Supp.2005).

70. *Id.* art. 38.14 (Vernon 2005).

71. *Id.*

weapon.[72] Additionally, other Texas courts of appeals have held that the requirement of article 38.14 does not apply when the State offers testimony of an accomplice witness to prove extraneous offenses at the punishment stage of trial in a noncapital case.[73]

 We note that article 38.14 is a rule for sufficiency review, not an evidentiary rule.[74] Consequently, it does not govern the admissibility of evidence; rather, it governs determinations of sufficiency of the evidence when an accomplice testifies.[75] Article 37.07, section 3(a), on the other hand, which governs the admissibility of evidence at the punishment phase, is an evidentiary rule, but it contains no requirement that the accomplice be corroborated.[76] We therefore hold that the trial court did not err by admitting Winchester's uncorroborated testimony at the punishment phase because corroboration was not required. We overrule Appellant's seventh point.

### VI. CONCLUSION

Having overruled Appellant's nine points, we affirm the trial court's judgment.

CAYCE, C.J. concurs without opinion.

McCOY, J. concurs without opinion.

---

**72.** See *Vasquez v. State,* 56 S.W.3d 46, 48 (Tex.Crim.App.2001); *Jones v. State,* 982 S.W.2d 386, 395 (Tex.Crim.App.1998), *cert. denied,* 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999).

**73.** See, e.g., *Salazar v. State,* 87 S.W.3d 680, 683 (Tex.App.-San Antonio 2002, no pet.); *Megas v. State,* 68 S.W.3d 234, 242 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); *Goodman v. State,* 8 S.W.3d 362, 364 (Tex.App.-

Austin 1999, no pet.); *Johnson v. State,* 969 S.W.2d 134, 135 (Tex.App.-Texarkana 1998, pet. ref'd).

**74.** See Tex.Code Crim. Proc. Ann. art. 38.14.

**75.** See id.

**76.** See id. art. 37.07, § 3(a).