**Opinion filed July 25, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00317-CR
_____

## TIMOTHY MICHAEL GENG, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 16280**

## M E M O R A N D U M   O P I N I O N

This case involves Appellant, Timothy Michael Geng, bludgeoning a woman to death with a shovel during a verbal argument and alleging that he did so under the influence of sudden passion. *See* TEX. PENAL CODE ANN. § 19.02(a), (d) (West Supp. 2023). Appellant was charged by indictment with murder. *Id.* § 19.02(b)(1). Appellant entered an open plea of guilty to the offense and elected to have the jury assess his punishment. The jury assessed Appellant's punishment at imprisonment

for life in the Institutional Division of the Texas Department of Criminal Justice, and the trial court sentenced him accordingly. *Id.* § 12.32(a) (West 2019); § 19.02(c).

In Appellant's sole issue on appeal, he contends that the trial court erred in failing to submit an instruction on sudden passion during the punishment phase of trial. *See id.* § 19.02(d). We affirm.

*Factual and Procedural History*

On April 9, 2022, Department of Public Safety Trooper Andrew Najera apprehended Appellant in Zavala County, Texas, after two observed traffic violations and a pursuit that led to Appellant crashing his vehicle in a field. Following the pursuit, Appellant walked slowly toward Trooper Najera with his hands up and said, "Just shoot me. Just shoot me. I already killed somebody." Based on Appellant's statements and learning that Appellant resided in Big Spring, Trooper Najera contacted the Big Spring Police Department to perform a welfare check on the victim, Guadalupe Miranda. Officer Jeremiah Griff with the Big Spring Police Department responded to the welfare check and discovered Miranda, deceased, in the home that she had shared with Appellant. Officer Griff testified that it looked like Miranda had been there for several days, that her head was against the door, and that "[s]he had a severe laceration to her forehead and what looked like an indention on the left side of her head." The residence was in disarray with clothes and papers scattered in several rooms.[1]

Crystal City Police Detective Eric Estes interviewed Appellant while he was in custody. Appellant initially told Detective Estes that he was not responsible for killing Miranda, but that he only found her dead. The following day, Appellant changed his story about finding Miranda dead, and he confessed that he "snapped" and killed her.

---

[1]Appellant admitted that he ransacked the house to make it appear as if a burglary had occurred.

Appellant stated that, on that day, they argued because Miranda wanted him to plant the rosebushes, but he wanted to go "make some money." Appellant retrieved tools, including the shovel, from the workshop to load into the pickup and he and Miranda argued in the workshop. Appellant stated that, back in the house, "we got into it" and "[Miranda] was at the back door, and I went out there and grabbed the shovel out of the truck." After returning with the shovel, Appellant said, "I'm going to hit you with this." Appellant said that he "threw her against the door" and hit her with the shovel twice; once on top of her head and once on the side of her head. Over the next several days and prior to his apprehension in Zavala County, Appellant drove to Midland, drove to San Angelo, purchased pornographic DVDs on Miranda's credit card, stopped at a casino in central Texas, and drove to Eagle Pass. Appellant said, "Why did I do it? I know she was nitpicking at me; I know that she was trying to -- f-----g didn't want me to do this, didn't want me to do that. And she wanted me to plant the rosebushes."

According to Appellant's testimony, both he and Miranda had been drinking alcohol before the murder. Appellant testified that he had problems with alcohol and drug abuse and stated that both he and Miranda were alcoholics. Appellant testified that, on the day that Miranda was killed, Appellant had asked to use her pickup to travel to San Angelo for a job and asked that she accompany him. Miranda did not want Appellant to go to San Angelo but she also did not want to go with him. Appellant testified that they were laughing and talking one minute, and then it was a "mess." The couple kept drinking while they argued, and Miranda threatened to call the police if Appellant left with her pickup.

Appellant testified that he retrieved a shovel from the front lawn that he intended to put up, and he carried it through the residence to do so. Appellant testified that Miranda stepped in between him and the door and said, "You're not

3

going to San Angelo, you're going to stay here." Appellant testified that he "snapped" and struck her in the head with the shovel, killing her.

During the charge conferences, Appellant's trial counsel requested an instruction on sudden passion. The State responded that the evidence did not support such an instruction because it did not meet the "adequate cause" requirement. *See* PENAL § 19.02(a)(1), (d). The trial court denied Appellant's request. Following deliberations, the jury sentenced Appellant to life in prison.

*Standard of Review and Applicable Law*

Appellate review of an alleged charge error in the jury instructions is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). First, we must determine whether a charge error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch*, 357 S.W.3d at 649). Second, if error exists, we must conduct a harm analysis to determine whether the error resulted in sufficient harm to require reversal. *Id.*; *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd).

The trial court is responsible for providing the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007); *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021). Therefore, because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)). As such, when the charge is inaccurate, the trial court errs, and the error is subject to a harm analysis. *See Bell*, 635 S.W.3d at 645.

At the punishment phase of trial, a defendant "may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause." PENAL § 19.02(d). "Sudden passion is a mitigating circumstance that, if found by the jury to have been proven by a preponderance of the evidence, reduces the offense from a first degree felony to a second degree felony." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005) (citing PENAL § 19.02(c), (d)); *Beltran v. State*, 472 S.W.3d 283, 293 (Tex. Crim. App. 2015).

The Penal Code defines *sudden passion* as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). The Penal Code defines *adequate cause* as "cause that would commonly produce a degree of anger, rage, resentment or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). When requested, a sudden passion instruction is justified if the record minimally supports an inference:

> 1) that the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; 2) that his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; 3) that he committed the murder before regaining his capacity for cool reflection; and 4) that a causal connection existed "between the provocation, passion, and homicide."

*Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013) (quoting *McKinney*, 179 S.W.3d at 569). The defendant has the burden of production and persuasion on the issue. *Rivas v. State*, 473 S.W.3d 877, 884 (Tex. App.—San Antonio 2015, pet. ref'd) (citing *Wooten*, 400 S.W.3d at 605).

A sudden passion instruction is warranted even if the evidence on the issue is "weak, impeached, contradicted, or unbelievable." *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). "However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury." *McKinney*, 179 S.W.3d at 569. One principle of a sudden passion defense is that a high degree of emotion must be produced from provocation by the victim or another person such that it renders the actor incapable of rational thought and action. *See* PENAL § 19.02(a); *Wooten*, 400 S.W.3d at 605; *Kennedy v. State*, 193 S.W.3d 645, 653–54 (Tex. App.—Fort Worth 2006, pet. ref'd).

In deciding whether the trial court erred, we must determine whether Appellant was entitled to a sudden passion instruction by examining whether there was evidence that met the *McKinney* factors. *See McKinney*, 179 S.W.3d at 569. Accordingly, we examine whether Miranda provoked Appellant in a manner that would commonly produce a passion such as terror, anger, rage, or resentment in a person of ordinary temper; whether Appellant acted under the immediate influence of that extreme passion or emotion; whether Appellant murdered Miranda while that passion or emotion still existed and before there was a reasonable opportunity for that passion to cool; and whether a causal connection existed between Miranda's provocation, Appellant's passion, and the murder. *See id.*; *Beltran*, 472 S.W.3d at 290. "An appellate court's duty is to look at the evidence supporting the charge of sudden passion, not the evidence refuting it." *Beltran*, 472 S.W.3d at 294.

*Analysis*

In Appellant's sole issue on appeal, he contends that the trial court erred in refusing to grant his request to include a sudden passion instruction because "[t]he evidence of adequate cause is scant but sufficient to have enabled a rational jury to have found for the Appellant; [and that] therefore, the omission of the charge was harmful."

We review the evidence that might support Appellant's claim for an instruction on sudden passion. *See Beltran*, 472 S.W.3d at 294; *Trevino*, 100 S.W.3d at 239. Appellant's testimony provides the only evidence from which we can derive any alleged sudden passion, because he described the events preceding the murder, his mental state, and Miranda's actions prior to its commission. In this regard, the evidence that could conceivably support a sudden passion instruction was limited to his testimony that Miranda was "nagging" him, refused to allow him to take her pickup to San Angelo, and said she was going to call the police if he took her pickup without permission. On appeal, Appellant asserts that Miranda's "nagging" and "belligerence" constituted provocation that created a passion sufficient to warrant the instruction. But Appellant's testimony at trial was that he didn't know why he killed her; he was never that mad; he did not actually remember what she said that may have been provoking; and that he did not "remember actually doing it." Appellant testified that he just "snapped."

Although Appellant concedes on appeal that mere "nagging or arguing is not considered to be an adequate cause" for sudden passion, he argues that Miranda's "drinking and belligerence remove[d] the case from the realm of ordinary bickering." We disagree. The circumstances to assert sudden passion by reason of anger or rage must be exceptional. *See Beltran*, 472 S.W.3d at 295 (a sudden passion instruction was warranted when the defendant was awoken in the night by the victim sexually assaulting him and there was no time to find a more reasoned alternative course of action). "Arguing and nagging," alone does not rise to the level of adequate cause required by the statute, and simply reacting violently in response to provocation by another is not enough. *Trevino*, 100 S.W.3d at 238; *see also Dwelle v. State*, No. 11-20-00237-CR, 2022 WL 2720445 (Tex. App.—Eastland July 14, 2022, no pet.) (mem. op., not designated for publication) (holding that anger

7

stemming from remarks, which were alleged to cause Appellant to "snap," did not give rise to adequate cause for a sudden passion instruction).

Appellant provides no supporting legal basis as to why Miranda's "intoxication and belligerence" would elevate the "nagging," as described in Appellant's testimony, to a level of adequate cause as required by the statute. There was no evidence of an immediate threat of physical harm or heightened danger of harm to Appellant as a result of Miranda's alleged inebriation. And even a belief that a person posed a threat to his life, without more, does not support giving a sudden passion instruction. *Griffin v. State*, 461 S.W.3d 188, 193–94 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983)).

Moreover, a defendant may not rely on a cause of his own making to support an argument for sudden passion. *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Smith v. State*, 355 S.W.3d 138, 147 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)). Here, one of the inciting factors could be that Appellant wanted to use Miranda's pickup and that she did not give her permission for him to do so. That this made Appellant angry is a cause of his own making. A bare claim of emotionalism without facts that would cause a person of ordinary temperament to experience that severe or extreme emotionalism is insufficient to meet the "adequate cause" requirement. *See McKinney*, 179 S.W.3d at 570 ("There is no evidence that the verbal taunting and physical pushing by [the victim] produced a degree of anger, rage, resentment, or terror in Appellant, sufficient to render his mind incapable of cool reflection."); *Kennedy v. State*, 193 S.W.3d 645, 653–54 (Tex. App.—Fort Worth 2006, pet. ref'd) (some evidence must show that "Appellant's mental state rose beyond a bare claim of fear to render him incapable of rational thought and collected action"). Appellant failed to provide more than a bare claim that Miranda was nagging him, and then he "snapped." That

8

does not demonstrate a level of provocation from Miranda that would commonly produce such a violent act in a person of ordinary temper. It could be argued that *everyone* that overreacts as a result of being angered "snaps." That Appellant said that he "snapped" without more does not create an issue of sudden passion. In this regard, "the mere fact that a defendant acts in response to the provocation of another is not sufficient to warrant a charge on sudden passion." *Trevino*, 100 S.W.3d at 241. Moreover, sudden passion is an extreme emotional and psychological state. *Dukes v. State*, 486 S.W.3d 170, 180 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Saldivar v. State*, 980 S.W.2d 475, 506 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd)). The statement of Appellant that he snapped is not by itself evidence of the type of extreme emotional and psychological state required for sudden passion. *Id.*

Thus, the issue of sudden passion was not raised by the evidence. Appellant failed to establish by a preponderance of the evidence that Miranda adequately provoked him or that he was gripped by a high degree of passion or emotion as required by the statute. Further, there is no evidence as to the remaining *McKinney* factors—that sufficient passion or emotion still existed and before there existed a reasonable opportunity for Appellant's passion to cool, or that there was a causal connection between the alleged provocation, the passion, and the homicide.[2] Contrary to Appellant's argument, the evidence indicates that he had time to retrieve the shovel from the front of the house and that he did not recall being "that mad" at Miranda before striking her.

Having found that the issue of sudden passion was not raised by the evidence, we hold that the trial court did not err in denying Appellant's request for a sudden

---

[2]Here, we are not looking to evidence that refutes the instruction, but noting the *lack* of evidence on the *McKinney* factors, which is relevant to our review. *See Beltran*, 472 S.W.3d at 294; *McKinney*, 179 S.W.3d at 570–71.

passion instruction. Because we find that the trial court did not err, we need not conduct a harm analysis. *See Bell*, 635 S.W.3d at 645; *see also* TEX. R. APP. P. 47.1. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


July 25, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.