## DARCY GIBSON v. THE STATE.

No. 23660. Delivered May 14, 1947.

*Dawson & Hatten, Julian A. Weslow* and *Alvin R. Dawson,* all of Houston, for appellant on appeal.

*A. C. Winborn,* Criminal District Attorney, and *Kellis Daniel,* and *E. T. Branch,* Assistant Criminal Attorneys, all of Houston, and *Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was assessed a penalty of twenty-five years upon a conviction for the murder of Nathaniel Austin.

The appellant, a negro, lived in a crowded colored section in the City of Houston on a very narrow street, and the deceased was his next-door neighbor, the houses being some ten or fifteen feet apart. Ernest Austin, a brother of deceased, lived immediately across the street in front of appellant. In the early afternoon a number of negroes gathered at the home of appellant and engaged in shooting dice. It is conceded that some gin was consumed by appellant, and all of the facts would indicate a mutual association in the entertainment which was finally broken by one negro accusing somebody of getting his ten-dollar bill. Appellant stood the negroes up and searched them personally until someone handed him the bill, saying that it had been passed to him by another, probably as a joke. The feeling, however, became stirred all the more until the crowd was in an uproar. Some of the witnesses did not remember this part of the day's activities, but sufficient state witnesses so testified that there was no conflict in the testimony on this point. Thereafter, the things which took place are much in conflict. Many of the negroes, present and near, became state witnesses. They were specific in details and remarkably harmonious in their conclusions. It is sufficient to say that they out-testified appellant to the entire satisfaction of the jury, who assessed the heavy penalty.

Only one question is presented in the appeal which complains of the failure of the trial court, upon proper request, to instruct the jury on the law of self-defense. This necessitates a consideration of the testimony of appellant, who was the sole witness in his behalf, other than character witnesses. He gave the evidence upon which reliance was had for his right to a charge on self-defense. According to his testimony, when the fuss arose in his home and the parties began cursing and abusing each other, he ordered them out of his house. They left and repaired to the home of the deceased's brother, across the street, leaving appellant alone in his home. He reflected that one of the parties he had ordered out of his house was a brother, Mason, regarding whom he said, "I thought I ought to go over

and apologize to them for putting them out of my house * * * in order to square myself with my brother." He then says that when he went to the house and reached the front door they asked him if he had a pistol and had him hold up his hands and examined him. When they found he had none they refused to accept his explanation that he came over to square himself with his brother, and all jumped on him, threatening to kill him. Ernest Austin followed him out to the front yard, cursing and threatening him, and Nathaniel Austin, the deceased, came up and joined in the controversy and began cursing and abusing the appellant. Several of the negroes joined in the attack, and appellant said he backed across the street while they kept coming after him. In his own yard something hit him on the head, which dazed him. He then went into his house, got his pistol, and came back to the door while the other negroes were still approaching him, hollering and cursing. One of the parties said he was going to cut appellant's head off. He then started shooting. The result was two negroes were wounded and Nathaniel Austin lay dead in the edge of appellant's yard. A conflict then arose between his pursuers, some trying to kill appellant, while one prevented them from doing so. The witness then said, "I would not have shot anybody if they hadn't kept coming toward me when I was in my home. I shot to protect myself. I went in my house and got my gun. There were three or four of them jumping on me and I don't know exactly how many, and Arthur Odin was trying to keep them off of me." Again, he said, "I came out of my house shooting because they were still out there cursing me and one of them said he was going to cut my head off." Again, he said, "I shot because I was trying to protect myself. I did not go in my house and stay there because after I went in my house they were all out there cursing and saying they were going to kill me." Again, "I was trying to protect my life and was afraid I would be killed."

As above stated, the prosecuting witnesses, with a solid front, contradicted much of the foregoing evidence and made appellant the aggressor in every move. If their testimony alone was before the court there would be no issue of self-defense raised. We think, however, it was not within the power of the court to measure this evidence and say that it did not raise an issue of self-defense.

The Criminal District Attorney of Harris County and his very able assistants have filed a brief in which the contention is made that the evidence shows an offensive act on the part of appellant throughout so that he can not avail himself of the

law of self-defense. We have quoted sufficiently from the testimony to indicate that proper and full consideration has not been given to all of the evidence of appellant. Had he agreed with the state's witnesses, as to the position of the parties and the things said, he would have made himself the aggressor and would be compelled to suffer the consequences of the attack which he brought upon himself. Sufficient evidence was given, as above quoted, to indicate a different situation, however, viewed from his standpoint. We concede that self-defense is a defensive and not an offensive act, and must not exceed the bounds of defense and prevention. There must be an apparent necessity to ward off by force an unlawful act. It is a right based upon necessity. Thumm v. State, 7 S. W. 236. One who prepares for and brings an attack upon himself may not rely upon self-defense though his own life becomes endangered during such attack, and though he actually kills for the purpose of preventing another from killing him. It would not be in his necessary self-defense, and one can not avail himself of a necessity which he had knowingly and wilfully brought upon himself. Wilsons, Texas Criminal Laws, No. 981.

The situation, however, can not be surveyed by the court from the viewpoint of the state's evidence alone. He must consider the evidence of appellant and that produced in his behalf in determining the issue which such evidence has raised, and it matters not how much this is in conflict with the state's evidence so long as it is not surrounded by circumstances which would make his claim impossible, or which would defeat the right under the recognized rules of procedure. The case before us must be so considered. When this is done the evidence clearly raised the issue of self-defense and the trial court should have responded to the request for such a charge.

For the error pointed out, the judgment of the trial court is reversed and the cause is remanded.