PD-0440-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/17/2015 2:08:08 PM
Accepted 4/21/2015 1:56:38 PM
ABEL ACOSTA
CLERK

# No. PD - -15

## IN THE
## COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

# STATE OF TEXAS
**Appellant**
**v.**
# CHRISTOPHER E. EVANS
**Appellee**

Petition from the 52nd Judicial District Court of Coryell County, Texas
Trial Court Number FAM-13-21662 and
Cause Number 07-14-00145-CR in the Seventh Court of Appeals of Texas

## STATE'S PETITION FOR DISCRETIONARY REVIEW
## ORAL ARGUMENT NOT REQUESTED

**52ND JUDICIAL DISTRICT ATTORNEY**
**FOR CORYELL COUNTY, TEXAS**
Charles Karakashian, Jr.
Special Prosecutor
P. O. Box 919
Gatesville, Texas 76528
Phone: (254) 865-5911 Fax: (254) 865-5147
E-Mail: ckarakashian@aol.com
State Bar No. 11095700
April 17, 2015

FILED IN
COURT OF CRIMINAL APPEALS

April 21, 2015

ABEL ACOSTA, CLERK

## NAMES OF THE PARTIES TO THE FINAL JUDGMENT

### APPELLEE CHRISTOPHER E. EVANS

Appellee's Trial Counsel
Ms. Janet Prueitt
P.O. Box 36
Gatesville, Texas 76528

Appellee's Appellate Counsel
Mr. Stan Schwieger
601 Austin Avenue, Suite 12
P.O. Box 975
Waco, Texas 76703-0975

Appellee
Christopher E. Evans

### THE STATE OF TEXAS
Appellant's Trial Counsel
Mr. Dustin H. Boyd, District Attorney
Ms. Amanda Speer, Assistant District Attorney
702 Leon Street
Post Office Box 919
Gatesville, Texas 76528

Appellant's Appellate Counsel
Charles Karakashian, Jr.
Special Prosecutor
P.O. Box 919
Gatesville, Texas 76528

### TRIAL JUDGE
The Honorable Judge Trent Farrell
52nd Judicial District Court
Coryell County Courthouse
620 East Main Street, 2nd Floor
Gatesville, Texas 76528

# TABLE OF CONTENTS

NAMES OF ALL PARTIES TO THE FINAL JUDGMENT.................................iii

TABLE OF CONTENTS..................................................................................iii

TABLE OF AUTHORITIES ............................................................................v

STATEMENT REGARDING ORAL ARGUMENT .......................................1

STATEMENT OF THE CASE.........................................................................1

STATEMENT OF PROCEDURAL HISTORY................................................1

GROUNDS FOR REVIEW .............................................................................2

GROUNDS FOR REVIEW RESTATED ........................................................3

    I.    *The Amarillo Court of Appeals did not address whether*
    *Mr. Evans' provocation of the victim barred him from receiving*
    *either a self-defense charge or a necessity charge as was raised*
    *in the State's Brief* ...........................................................................3

        A.    Reason for Granting Review........................................................4

        B.    Factual Basis ................................................................................5

        C.    Argument .....................................................................................7

            1.    Shouldn't provocation bar a self-defense and
                 necessity instruction?....................................................8

            2.    Isn't a provocation analysis necessary to the
                 decision in this case? ....................................................9

            3.    Was Mr. Evans' evidence legally sufficient to
                 support a rational jury finding of either self-defense
                 or necessity in light of his provocation?.......................10

II.   *The Amarillo Court of Appeals did not fully address whether Mr. Evans was harmed by the failure to include either, or both, a self-defense instruction and necessity instruction since the court only took into account the evidence supporting the instruction and failed to analyze whether there was overwhelming evidence of Mr. Evans' guilt as raised in the State's Brief* ...............................................................12

    A.   Reason for Granting Review........................................................13

    B.   Factual Basis ..............................................................................13

    C.   Argument ....................................................................................14

        1.   The Court of Appeals finds the lettuce, tomato and pickles ............................................................................14
        2.   But, where's the beef? .......................................................14
        3.   Overwhelming evidence of guilt argues against finding of harm ................................................................16

III.   Conclusion.....................................................................................17

PRAYER FOR RELIEF .......................................................................................18

CERTIFICATE OF SERVICE ...........................................................................19

CERTIFICATE OF COMPLIANCE..................................................................19

### APPENDIX

*Evans v. State*, No. 07-14-00145-CR (Tex. App. – Amarillo March 23, 2015, no pet. h.) (mem. op. not design. for pub.) .....................................................

iv

# TABLE OF AUTHORITIES

## STATE CASES

*Almanza v. State*,
686 S. W. 2d 157 (Tex. Crim. App. 1985) .......................................................13, 16

*Arnwine v. State*,
20 S. W. 3d 155 (Tex. App.--Texarkana 2000, no pet.) ..........................................12

*Arline v. State,*
721 S. W. 2d 348  (Tex. Crim. App. 1986) .......................................................16, 17

*Brazelton v. State,*
947 S. W. 2d 644 (Tex. App. - Fort Worth 1997, no pet.) ......................................12

*Cornet v. State*,
417 S. W. 3d 446 (Tex. Crim. App. 2013) .......................................................16, 17

*Dyson v. State,*
672 S. W. 2d 460 (Tex. Crim. App. 1984) ............................................................10

*Elmore v. State*,
257 S. W. 3d 257 (Tex. App. – Houston [1st Dist.] 2008, no pet.)...........................8

*Evans v. State*,
No. 07-14-00145-CR (Tex. App. – Amarillo March 23, 2015, no pet. h.)
(mem. op. not design. for pub.)………………………..2,3,4,7,9,13,14,15,Appendix

*Ford v. State,*
112 S. W. 3d 788 (Tex. App. – Houston [14th Dist.] 2003, no pet.).....................3, 9

*Gibson v. State,*
150 Tex. Crim. 401, 202 S. W. 2d 236  (1947) ....................................................10

*Keehn v. State*,
233 S. W. 3d 348 (Tex. Crim. App. 2007) ........................................................5, 9

*Kennedy v. State*,
193 S. W. 3d 645 (Tex. App. – Fort Worth 2006, pet. ref'd.)........................4, 9, 10

*Kombudo v. State*,
171 S. W. 3d 888 (Tex. Crim. App. 2005) ......................................................5, 10

*Lavern v. State,*
48 S. W. 3d 356 (Tex. App. Houston [14th Dist.] 2001, pet. ref'd.)......................10

*Light v. State*,
15 S. W. 3d 104 (Tex. Crim. App. 2000) ...............................................................10

*Lockhard v. State*,
847 S. W. 2d 568 (Tex. Crim. App. 1992) ..............................................................10

*Preston v. State,*
756 S. W. 2d 22 (Tex. App. Houston 14th Dist. 1988, pet. ref'd.) ........................12

*Reeves v. State*,
420 S. W. 3d 812 (Tex. Crim. App. 2013) ..............................................................13

*Sanchez v. State,*
376 S. W. 3d 767 (Tex. Crim. App. 2012) .......................................................13, 16

*Shaw v. State*,
243 S. W. 3d 647 (Tex. Crim. App. 2007) ..............................................................11

*Smith v. State*,
638 S. W. 2d 208 (Tex. App. – Fort Worth 1982, no pet.).....................................11

*Smith v. State*,
965 S. W. 2d 509 (Tex. Crim. App. 1998) ..............................................................10

*Stefanoff v. State*,
78 S. W. 3d 496 (Tex. App. – Austin 2002, pet. ref'd.) .........................................11

*State v. Rhinehart*,
333 S. W. 3d 154 (Tex. Crim. App. 2011) ................................................................5

*Wilson v. State*,
853 S. W. 2d 547 (Tex. Crim. App. 1993) ...............................................................12

**STATE STATUTES**

Tex. Code Crim. Proc. Ann. Art. 36.19 (West 2013) ...............................................16

Tex. Code Crim. Proc. Ann. Art. 37.07 (2) (b) (West 2013) .....................................1

Tex. Penal Code Ann. §2.03 (c) (West 2013) ..........................................................11

Tex. Penal Code Ann. §9.22 (West 2013) ...............................................................11

Tex. Penal Code Ann. §9.31 (a) (West 2013) ..........................................................11

Tex. Penal Code Ann. §9.31 (b) (1) (West 2013) .......................................................3

Tex. Penal Code Ann. §9.31 (b) (4) (West 2013) ........................................3, 4, 9, 10

Tex. Penal Code Ann. §9.31 (b) (5) (West 2013) .......................................................3

Tex. Penal Code Ann. §9.33 (West 2013) .................................................................8

Tex. Penal Code Ann. §22.01 (a) (2) (West 2013) .....................................................1

Tex. Penal Code Ann. §22.02 (a) (2) (West 2013) .....................................................1

**STATE RULES**

Tex. R. App. P. 47.1 ...................................................................................4, 5, 9, 10

Tex. R. App. P. 66.3 (f) ..............................................................................5, 12, 13,17

## STATEMENT REGARDING ORAL ARGUMENT

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

The State does not request oral argument since oral argument would not be of assistance to this Court.

## STATEMENT OF THE CASE
## STATEMENT OF PROCEDURAL HISTORY

The State of Texas indicted Mr. Evans, Appellee, in cause number FAM-13-21662 for the offense of Aggravated Assault with a Deadly Weapon, to wit: a firearm.[1] Mr. Evans pleaded not guilty, and a jury trial was conducted. The main indicted charge, along with the lesser-included offense of Assault by Threat,[2] was submitted to the jury.[3] The jury found Mr. Evans guilty of Aggravated Assault with a Deadly Weapon.[4]

Mr. Evans elected for the trial court to assess punishment.[5] The sentencing hearing was conducted on February 28, 2014. On that date, the trial court sentenced Mr. Evans to twenty years confinement in the Institutional Division of

---

[1]     *See* Tex. Penal Code Ann. §22.02(a)(2) (West 2013); (I C.R. at 2).
[2]     *See* Tex. Penal Code Ann.§22.01(a)(2) (West 2013).
[3]     (I C.R. at 14).
[4]     (I C.R. at 19).
[5]     (6 R.R. at 179); Tex. Code Crim. Proc. Ann. Art. 37.07 (2) (b) (West 2013). The punishment hearing was reset pending completion of a pre-sentence investigation.

the Texas Department of Criminal Justice.[6] The trial court certified the Defendant's right to appeal.[7] Notice of Appeal was filed on March 6, 2014.[8] The Amarillo Court of Appeals reversed and remanded the trial court's decision on March 23, 2015.[9] No motion for rehearing was filed in the Court of Appeals. The State's Petition for Discretionary Review is due to be filed on April 21, 2015.

## GROUNDS FOR REVIEW

The State raises two grounds for review:

**GROUND NUMBER ONE**

The Amarillo Court of Appeals did not address whether Mr. Evans' provocation of the victim barred him from receiving either a self-defense charge or a necessity charge as was raised in the State's Brief.

**GROUND NUMBER TWO**

The Amarillo Court of Appeals did not fully address whether Mr. Evans was harmed by the failure to include either, or both, a self-defense instruction and necessity instruction since the Court only took into account the evidence

---

[6]    (1 CR 27), (7 RR 19).
[7]    (1 CR 29).
[8]    (1 CR 29, 30).
[9]    *Evans. v. State*, No. 07-14-00145-CR at \*2 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.)(mem. op. not designated for publication).

supporting the instruction and failed to analyze whether there was overwhelming evidence of Mr. Evans' guilt as raised in the State's Brief.

---

## GROUNDS FOR REVIEW RESTATED

---

### I. Ground For Review Number One Restated

*The Amarillo Court of Appeals did not address whether Mr. Evans' provocation of the victim barred him from receiving either a self-defense charge or a necessity charge as was raised in the State's Brief*

The State raised provocation as an issue in its response to Evans' argument that it was error not to give either, or both, a self-defense and necessity instruction in the jury charge. As to each, the State raised, verbal provocation as a statutory bar pursuant to Tex. Penal Code §9.31 (b) (1)[10] *and* provocation by the actor of another's use or attempted use of unlawful force pursuant to Tex. Penal Code §9.31 (b) (4).[11] The Court of Appeals addressed the verbal provocation issue, but wholly failed to address the provocation issue under §9.31 (b) (4). Had the Court

---

[10]    *See* Tex. Penal Code Ann. §9.31 (b) (1) (West 2013).
[11]    *See* Tex. Penal Code Ann. §9.31 (b) (4) (West 2013). The State also argued Mr. Evans was not entitled to a self-defense instruction because he unlawfully carried a weapon while seeking an explanation or discussion with the victim under Tex. Penal Code §9.31 (b) (5). While the State argued a reasonable inference could be made that Evans knew the victim would be present the night of the confrontation, the Court of Appeals found no support in the record for this contention. *Evans. v. State*, No. 07-14-00145-CR at *9 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.)(mem. op. not designated for publication). *See Ford v. State*, 112 S. W. 3d 788, 794 (Tex. App. – Houston [14th Dist.] 2003, no pet.) (holding that one who provokes the difficulty, or is responsible for having placed himself in the position from which he attempts to extricate himself by committing a criminal offense, is not entitled to a charge authorizing his acquittal of that offense based upon necessity).

3

of Appeals properly addressed the provocation issue, it could not have found Evans was entitled to either a self-defense or necessity instruction.

## A. Reason for Granting Review

The Amarillo Court of Appeals found Mr. Evans was entitled to a jury instruction on both self-defense and necessity. The failure to include both requested instructions was found to be an abuse of discretion and error.[12] The State, in its Brief, presented several arguments as to why Evans was not entitled to either a self-defense instruction or necessity instruction. The State's primary argument was that Evans was not entitled to a self-defense or necessity instruction because he initiated the confrontation between himself and the victim.[13] Although the Amarillo Court issued an unpublished opinion, the State's petition for discretionary review is based upon its concern that the Court extends the justifications of self-defense and necessity to a person who struggled to take a baby from its mother's arms, then pulled a gun to threaten her would-be rescuer.

A Court of Appeals is obliged to address every issue raised and necessary for a final disposition of the appeal.[14] The failure to comply with Rule 47.1

---

[12]     *Evans. v. State*, No. 07-14-00145-CR at *11 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.)(mem. op. not designated for publication).

[13]     Tex. Penal Code Ann.§9.31 (b) (4) (West 2013); *Kennedy v. State*, 193 S. W. 3d 645, 654 (Tex. App. – Fort Worth 2006, pet. ref'd.) (provoking the use of force acts as a limitation or total bar on a Defendant's right to self-defense).

[14]     Tex. R. App. P. 47.1.

4

warrants a summary grant and remand to the Court of Appeals.[15] When the Court of Appeals fails to comply with rule 47.1, review is warranted under this Court's power of supervision as set forth in Rule 66.3 (f).[16] The State's argument that Evans was not entitled to a self-defense or necessity instruction because he provoked the victim's possible attempted use of force was necessary to the final disposition of the appeal. As such, the Court of Appeals should have addressed it. Since the Court ignored this argument raised by the State, this Court should exercise its power of supervision and grant the State's petition for discretionary review.[17]

### B. Factual Basis

Evans initiated a confrontation between himself and his ex-girlfriend, Ms. Kimberly Easley, over custody of their baby in an HEB parking lot. Ms. Easley had the baby in her arms when Evans suddenly moved to take the baby from her. A physical struggle over the baby ensued. Mr. Kevin Drayton, seeing the struggle, ran to aid Ms. Easley. Evans saw Drayton coming, pulled out a gun, and threatened to shoot him.

---

[15] *See Keehn v. State*, 233 S. W. 3d 348, 349 (Tex. Crim. App. 2007).
[16] Tex. R. App. P. 66.3 (f).
[17] *See Kombudo v. State*, 171 S. W. 3d 888, 889 (Tex. Crim. App. 2005) (Tex. R. App. P. 47.1 requires a Court of Appeals to address an alternative argument in an Appellee's reply); *State v. Rhinehart*, 333 S. W. 3d 154, 160 (Tex. Crim. App. 2011).

Evans had picked up the baby (T.E.) several days earlier and was supposed to return him that same night, but didn't.[18] Ms. Easley made numerous attempts to get her baby back, but was unsuccessful.[19] On January 7, 2013, Evans contacted her and asked if she wanted to meet him and see T.E. They agreed to meet at the parking lot.[20] Ms. Easley went and met Evans who handed the baby to her. After a brief conversation, Evans grabbed for the child, to take him from Ms. Easley. Drayton then ran up to help her. Evans pulled his gun on Mr. Drayton. Drayton backed away, Evans turned to grab for the child again. Drayton then tried to get the gun from Evans.[21]

Evans previously met Drayton and had a physical altercation with him.[22] Drayton also testified that, on another occasion, Evans pulled a gun and made threatening gestures to him.[23] Evans had received threatening texts he believed were from Drayton.[24] When he set up the meeting with Ms. Easley, Evans told her to come alone.[25]

---

[18]    (5 RR 110).
[19]    (5 RR 111).
[20]    (5 RR 119).
[21]    (5 RR 120 – 122,126).
[22]    (5 RR 143) Drayton testified that Evans had burst into Ms. Easley's apartment, found Drayton sleeping there, and attacked him.
[23]    (5 RR 144) Drayton testified that Evans and his friends made signs indicating to him that they were going to kill him by doing "trigger fingers" at him. (5 RR 144)
[24]    (6 RR 102 – 104).
[25]    (6 RR 105, 106) Ms. Easley disputes this, testifying that Evans placed no conditions on her about meeting him to see the baby. (5 RR 120)

Drayton followed Ms. Easley to ensure her safety due to Evans' violent temper.[26] He saw Evans give the child to Ms. Easley, then saw Evans attack and struggle with Ms. Easley, so he ran to help her. When he told Evans to get off her, Evans pulled out his gun, pointed it at him, and started yelling.[27] Drayton never touched Evans before Evans pulled out his gun and pointed it at him.[28]

It is undisputed that there was a struggle between Evans and Ms. Easley.[29]

## C.   ARGUMENT

The Amarillo Court of Appeals notes the struggle for possession of the child.[30] However, the Court failed to give full play to the interaction between Evans and Ms. Easley during the critical moments before Evans pulled his gun. Ms. Easley, while holding the baby (T.E.), said she would not go back to Evans. After hearing this, he grabbed for T.E. and jerked on T.E.'s coat to pull him from Ms. Easley's arms. Ms. Easley held on to her baby and told Evans to stop. She managed to break away from him and tried to place T.E. in her vehicle. Evans continued to grab T.E. and Ms. Easley to prevent them from getting into her vehicle.

---

[26]     (5 RR 148, 149).

[27]     (5 RR 149-153) .

[28]     (5 RR 153, 154)  Drayton was very scared. He did not have a weapon on him. (5 RR 153,154)  He was approximately 15 to 20 or 30 feet away from Evans when Evans pulled the gun. (6 RR 69, 70).

[29]     *Evans. v. State*, No. 07-14-00145-CR at *3 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.) (mem. op. not designated for publication).

[30]     *Id* at *3.

7

While Ms. Easley yelled for Evans to stop, Drayton ran up. Evans pulled out his gun and told Drayton he was going to die.[31]

Drayton saw Evans attack Ms. Easley and moved to protect her.[32] An independent witness, Ms. Shirley Allen, observed Evans grab the baby from Ms. Easley. Ms. Allen testified that she saw them struggle over the baby and saw Evans "pushing and shoving (Ms. Easley), screaming the whole time."[33] Evans admitted the struggle, testifying, "I was trying to grab her jacket."[34]

### 1. Shouldn't provocation bar a self-defense and necessity instruction?

The State argued in its Brief that Evans was not entitled to either instruction because he provoked the victim.[35] Drayton ran up to Evans in defense of a third person, Ms. Easley. Drayton never used or attempted to use force, although he was authorized to do so pursuant to Texas Penal Code §9.33.[36]

A self-defense instruction is not required when the evidence establishes that, as a matter of law, force is not justified in self-defense.[37] A person who would otherwise be entitled to act in self-defense forfeits the right to defend himself if he

---

31     (5 RR 124 – 128); (6 RR 75).
32     (5 RR 150) Mr. Drayton testified he "ran to her aid." (5 RR 151).
33     (6 RR 75).
34     (6 RR 108).
35     *See* State's Brief at page 18.
36     *See* Tex. Penal Code Ann. §9.33 (Defense of a Third Person) (West 2013).
37     *Elmore v. State*, 257 S. W. 3d 257, 259 (Tex. App. – Houston [1st Dist.] 2008, no pet.).

8

provoked the other's use or attempted use of unlawful force.[38] Evans was not entitled to an instruction on self-defense because he provoked Drayton by attacking Ms. Easley.[39]

The State argued against including a necessity instruction for the same reason.[40] A person who provokes the difficulty, or is responsible for having placed himself in the position from which he attempts to extricate himself by committing a criminal offense, is not entitled to a charge authorizing his acquittal of that offense based upon necessity.[41]

### 2. Isn't a provocation analysis necessary to the decision in this case?

Considering the State argued provocation to the Court of Appeals, the Amarillo Court should have addressed it.[42] The Texas Rules of Appellate Procedure require a Court of Appeals to address every issue raised and necessary for a final disposition of the appeal.[43]

---

[38]    *See* Tex. Penal Code Ann. §9.31 (b) (4) (West 2013); *see also Kennedy v. State*, 193 S. W. 3d 645, 654 (Tex. App. – Fort Worth 2006, pet. ref'd.) .

[39]    *See Kennedy v. State*, 193 S. W. 3d 645, 654 (Tex. App. – Fort Worth 2006, pet. ref'd.) (provoking the use of force acts as a limitation or total bar on a Defendant's right to self-defense).

[40]    *See* State's Brief at page 25.

[41]    *See Ford v. State*, 112 S. W. 3d 788, 794 (Tex. App. – Houston [14th Dist.] 2003, no pet.).

[42]    The Amarillo Court did address *verbal* provocation, but failed to address the more compelling *physical* provocation issue. *Evans. v. State*, No. 07-14-00145-CR at *6,*7 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.) (mem. op. not designated for publication).

[43]    *See* Tex. R. App. P. 47.1; *Keehn v. State*, 233 S. W. 3d 348, 349 (Tex. Crim. App. 2007) (finding summary grant, vacate, and remand appropriate when Court of Appeals fails to discharge 47.1 duty.).

This State's Appellate Courts have found provocation a statutory bar to self-defense pursuant to Texas Penal Code section 9.31 (b) (4), and no error to omit a self-defense instruction when the Defendant provokes the encounter.[44] Further, Evans cannot avail himself of a necessity, which he has knowingly and willfully brought upon himself.[45] It was, therefore, necessary for the Court of Appeals to address the State's provocation argument under Rule 47.1.[46] The failure of the Amarillo Court to address this issue requires a remand for consideration of whether Evans provoked the victim in this case and whether such provocation would bar a self-defense and necessity instruction.[47]

3. **Was Mr. Evans' evidence legally sufficient to support a rational jury finding of either self-defense or necessity in light of his provocation?**

---

[44] *See Smith v. State*, 965 S. W. 2d 509, 512-13 (Tex. Crim. App. 1998). (Defendant may not claim self-defense if he provokes the attack seeking an excuse to injure the other party); *Lockhard v. State*, 847 S. W. 2d 568, 574-575 (Tex. Crim. App. 1992 (no error in omitting self-defense instruction where appellant initiated the altercation and there was no evidence he abandoned the encounter); *Kennedy v. State,* 193 S. W. 3d 645, 654 (Tex. App. – Fort Worth 2006, pet. ref'd.) (provoking the use of force acts as a limitation or total bar on a Defendant's right to self-defense. A Defendant is not entitled to a charge on self-defense where there is no dispute that he provoked the other's use or attempted use of force. *See Dyson v. State*, 672 S. W. 2d 460, 463 (Tex. Crim. App. 1984); *Lavern v. State*, 48 S. W. 3d 356, 361 (Tex. App. Houston 14th Dist. 2001, pet. ref'd.).

[45] *See Gibson v. State*, 150 Tex. Crim. 401, 404, 202 S. W. 2d 236, 237 (1947).

[46] Tex. Penal Code Ann. §9.31 (b) (4) (West 2013); Tex. R. App. P. 47.1.

[47] *See Light v. State*, 15 S. W. 3d 104, 106 (Tex. Crim. App. 2000) (Court of appeals erred by not considering State's argument); *Kombudo v. State, 171 S. W. 3d 888 (Tex. Crim. App. 2005)* (compelling an Appellate Court to address "even an alternative argument in an Appellee's reply.").

Whether the evidence raises a defense is always a question of law.[48] The Amarillo Court decided a rational juror could have reasonably found Evans believed harm was imminent and so the use of force was reasonably necessary to protect him against Drayton's use of force.

Under 2.03 (c) of the Texas Penal Code, a defense is supported (or raised) by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true.[49] Both self-defense and necessity require a finding that the Defendant reasonably believed his use of force[50] or unlawful conduct[51] was immediately necessary to avoid imminent harm. Even in the light most favorable to Evans, no rational jury could have found that Evans' actions were based upon a reasonable belief of imminent harm. Simply running up to the scene was not an aggressive move which could reasonably cause a person to believe they were faced with imminent harm, justifying their pulling out a gun and threatening someone with it.[52] There was insufficient evidence of an overt act, which a rational juror

---

[48] *Shaw v. State*, 243 S. W. 3d 647 (Tex. Crim. App. 2007).
[49] *See* Tex. Penal Code Ann. §2.03 (c) (West 2013); *Shaw v. State*, 243 S. W. 3d 647, 657 (Tex. Crim. App. 2007).
[50] Tex. Penal Code Ann. §9.31 (a) (West 2013).
[51] Tex. Penal Code Ann. §9.22 (West 2013).
[52] *See Smith v. State*, 638 S. W. 2d 208, 210 (Tex. App. – Fort Worth 1982, no pet.) (no self-defense instruction even though Complainant threatened Defendant on previous occasions, because force could not have reasonably been believed to be "immediately necessary" to protect Defendant against Complainant; *See also Stefanoff v. State,* 78 S. W. 3d 496, 500 (Tex. App. –

would find gave rise to a reasonable belief of imminent harm.[53] When considered in the context of Evans' attack on Ms. Easley, his struggle to grab a baby from her, and the distance between Evans and Drayton at the time Evans pulled out his gun, a rational juror could not have found an imminent need for Evans to draw his gun. The Amarillo Court erred in finding there was legally sufficient evidence to support Evans' requested instructions.[54] It departed from "the accepted and usual course of judicial proceedings," which calls for this Court to grant this petition.[55]

## II. Ground For Review Number Two Restated

*The Amarillo Court of Appeals did not fully address whether Mr. Evans was harmed by the failure to include either, or both, a self-defense instruction and necessity instruction since the court only took into account the evidence supporting the instruction and failed to analyze whether there was overwhelming evidence of Mr. Evans' guilt as raised in the State's Brief*

---

Austin 2002, pet. ref'd.) (More than a generalized fear of harm is required to raise the issue of imminent harm.).

[53] *See Preston v. State*, 756 S. W. 2d 22, 25 (Tex. App. Houston 14th Dist. 1988, pet. ref'd.). (The mere fact that Evans "believed" the complainant might in some manner attack him, without evidence of any overt act or words that would lead the accused to reasonably believe he was in danger, is insufficient to give rise to a right to an instruction and charge on self-defense.).

[54] Whether a Defendant was prompted to act by a reasonable belief is ordinarily an issue for the trier of fact. *Brazelton v. State*, 947 S. W. 2d 644, 648 (Tex. App.- Fort Worth 1997, no pet.). However, this belief may be deemed unreasonable, as a matter of law, if undisputed facts demonstrate a complete absence of immediate necessity or immediate harm. *Arnwine v. State*, 20 S. W. 3d 155, 159 (Tex. App.--Texarkana 2000, no pet.); *Wilson v. State*, 853 S. W. 2d 547 (Tex. Crim. App. 1993).

[55] Tex. R. App. P. 66.3 (f).

Without waiving any of the foregoing, the State's second ground for review is the Amarillo Court did not conduct a proper harm analysis when it determined Mr. Evans suffered some harm.[56]

### A. Reason for Granting Review

The Amarillo Court of Appeals correctly set out the standard for a harm analysis for a preserved charge error.[57] It properly noted that, while the "some harm" standard is a less stringent standard, it still requires the reviewing court to find the Defendant "suffered some actual, rather than merely theoretical, harm from the error."[58] However, in its analysis of the evidence, the Court reviewed the evidence from Evans' perspective, mischaracterized a portion of the testimony of one of the disinterested third party witnesses, and ignored the evidence given by Mr. Drayton, Ms. Easley, and the other disinterested third party witness. Had the Court reviewed the entirety of the evidence, it only could have concluded Mr. Evans suffered no actual harm. Review is warranted under Tex. R. App. P. 66.3(f).

### B. Factual Basis

The jury heard Evans and Ms. Easley had a confrontation and struggled while Ms. Easley was holding the baby. Mr. Drayton went to assist Ms. Easley,

---

[56] *Evans. v. State*, No. 07-14-00145-CR at *13 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.) (mem. op., not designated for publication).

[57] *Id* at *11; *Reeves v. State*, 420 S. W. 3d 812, 816 (Tex. Crim. App. 2013) (citing *Almanza v. State,* 686 S. W. 2d 157, 171 (Tex. Crim. App. 1985).

[58] *Evans* at *12; *Sanchez v. State*, 376 S. W. 3d 767, 775 (Tex. Crim. App. 2012).

and Evans pulled the gun on him.[59] Evans admitted there was a struggle, he pulled out a gun, and stated that someone was "going to die tonight."[60]

## C. Argument

### 1. The Court of Appeals finds the lettuce, tomato and pickles

The Amarillo Court addressed the entire charge, arguments of counsel and other relevant factors.[61] However, the Court failed to address the state of the evidence adequately.

### 2. But, where's the beef?

The "beef" is the overwhelming evidence of Evans' guilt, which the Amarillo Court ignores. The Court mischaracterized Small's testimony.[62] Mr. Small testified he saw someone run across the parking lot. He decided to pull around and see if there was going to be a fight.[63] He then saw one man pointing a gun at the other. Noticing there were police officers across the road, he began

---

[59] Ms. Easley was yelling for help at the time. She said Drayton never said anything to Evans or touched him before Evans pulled his gun. (5 RR 128, 129). Drayton saw Evans attacking Ms. Easley, ran to help her and told Evans to get off her. Evans pulled out his gun, pointed it at him, and started yelling (5 RR 149-154).

[60] Evans saw Drayton moving quickly towards him then testified he was "creeping up." Evans stated he pulled a gun out and told Drayton to "Back the f**k up," just to make Drayton back up (6 RR 108, 109).

[61] *Evans. v. State*, No. 07-14-00145-CR at *12 - *14 (Tex. App. – Amarillo Mar. 23, 2015, no pet. h.)(mem. op., not designated for publication) (the court finds it relevant that Mr. Drayton was released without being charged with anything).

[62] *Id* at *13.

[63] (6 RR 65).

honking his horn to get their attention to make sure nobody was hurt or shot.[64]

While the Amarillo Court casts Mr. Small's testimony as supportive of Evans' self-defense and necessity claim, when taken in the context of his entire testimony, i.e., observing one man pointing a gun at another, his concern was not for the man pointing the gun, but the one at the other end of it.

Mr. Small, importantly, said the two individuals were about 15 to 20 or 30 feet apart when one of them pulled the gun out on the other one.[65]

A second disinterested eyewitness, Ms. Shirley Allen, testified she saw Evans give the baby to a woman, then start pushing and shoving her. She saw Evans trying to pull the baby from the woman's grasp. Ms. Allen heard the woman scream and saw another man approach them. She heard the other man say, "Hey, don't need any of this man, that's enough!"[66] She saw Evans pull his pistol and point it at the man saying, "You going to die tonight, motherf\*\*ker!"[67] Although the testimonies of Ms. Allen and Mr. Small were key to a proper harm analysis, the Amarillo Court entirely omitted Ms. Allen's testimony and most of the relevant portion of Mr. Small's testimony.[68]

---

[64] (6 RR 66).
[65] (6 RR 69, 70).
[66] (6 RR 75).
[67] (6 RR 75).
[68] The Amarillo Court also entirely omitted Ms. Easley's testimony. The only reference to Drayton's testimony is the portion the court used to confirm Evans' concern for the child. (*Evans* at \*13).

### 3. Overwhelming evidence of guilt argues against finding of harm.

If jury charge error is preserved by a timely objection, the reviewing court must look to see if the Appellant suffered some harm because of the error.[69] The harm caused by the error must be considered "in light of the entire jury charge, the state of the evidence including the contested issues and the weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record of the trial as a whole."[70] The harm must be actual, not theoretical.[71] Cases involving preserved charging error will be affirmed only if no harm has occurred. Harm is that error which "was calculated to injure the rights of [Evans]"[72]. However, whether harm existed should be considered in the context of the entire record.[73]

An Appellate Court must consider the state of the evidence including the contested issues and the weight of probative evidence as part of an *Almanza* analysis.[74] The Court of Appeals is required to examine the relevant portions of the entire record to determine whether a Defendant suffered any actual harm as a result

---

[69]    *See Almanza v. State*, 686 S. W. 2d 157, 171 (Tex. Crim. App. 1985). The State agrees that this is the proper analysis in this case.

[70]    *Id* at 171; *See also* Tex. Code Crim. Proc. Art. 36.19 (West 2013).

[71]    *See Arline v. State*, 721 S. W. 2d 348, 352 (Tex. Crim. App. 1986); *Sanchez v. State*, 376 S. W. 3d 767, 775 (Tex. Crim. App. 2012).

[72]    *Arline* at 351.

[73]    *Id* at 352.

[74]    *Almanza v. State,* 686 S. W. 2d 157, 171 (Tex. Crim. App. 1985); *Cornet v. State*, 417 S. W. 3d 446, 453 (Tex. Crim. App. 2013).

of the error. [75] The state of the evidence is relevant to a harm analysis in assessing the record for the harmful impact of a charge error.[76]

The Amarillo Court found harm by conducting an incomplete review of the record. It placed undue emphasis on certain evidence, failed to give adequate weight to other evidence, and completely ignored evidence in the record that would have refuted Mr. Evans' claim of imminent danger. By failing to consider the entirety of the evidence, the Amarillo Court of Appeals erred in its harm analysis. This Court should therefore grant review pursuant to Rule 66.3 (f).[77]

## III. Conclusion

It is important to this State's jurisprudence that the justifications of self-defense and necessity not be extended to a person who struggles to take a baby from a woman's arms, then pulls a gun to threaten her would-be rescuer. Because the Amarillo Court failed to address this provocation issue, and because its harm analysis was based upon an incomplete review of the record, review should be granted.

---

[75]     *Arline v. State*, 721 S. W. 2d 348, 352 (Tex. Crim. App. 1986).
[76]     *Cornet v. State*, 417 S. W. 3d 446, 453 (Tex. Crim. App. 2013) (review for sufficiency of the evidence cannot substitute for a harm analysis.).
[77]     Tex. R. App. P. 66.3 (f).

## PRAYER FOR RELIEF

Wherefore, Premises Considered, the State of Texas prays this Court grant its petition, reverse the judgment of the Court of Appeals, and order briefing on the merits of this case or, in the alternative, vacate the judgment of the Court of Appeals and remand the case to the Court of Appeals to address the provocation and harm issues set forth above.

Respectfully Submitted,


*/s/ Charles Karakashian, Jr.*

Charles Karakashian, Jr.
Special Prosecutor
52nd Judicial District
State Bar No. 11095700
P. O. Box 919
Gatesville, Texas 76528
254-865-5911 x 2267
254-865-5147 - (fax)
ckarakashian@aol.com

## Certificate of Service

By my signature affixed above, I, Charles Karakashian, Jr., certify that on April 17, 2015, a true and correct copy of the foregoing State's Petition for Discretionary Review was delivered to Mr. Stan Schwieger, attorney of record for Mr. Evans, by electronic mail through the required e-filing service at wacocrimatty@yahoo.com and to the State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, Texas 78711, by first class mail.

## Certificate of Compliance

By my signature affixed above, I, Charles Karakashian, Jr., certify that the foregoing Brief complies with the requirements of Tex. R. App. P. Rule 9.4, and, according to Microsoft Word 2010, in which it was created, contains 4283 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4 (i) (1).



In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-14-00145-CR
_____

CHRISTOPHER EVANS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 52nd District Court
Coryell County, Texas
Trial Court No. FAM-13-21662; Honorable Trent D. Farrell, Presiding

March 23, 2015

MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Christopher Evans, was convicted by a jury of aggravated assault with an affirmative finding on use of a deadly weapon.[1] Punishment was assessed by the trial court at twenty years confinement. By two

---

[1] TEX. PENAL CODE ANN. § 22.02(a)(2) (West 2011). As applicable to this case, a person commits aggravated assault by intentionally or knowingly threatening another with imminent bodily injury while using or exhibiting a deadly weapon during the commission of that threat. *Id.* at § 22.02(a)(2). A firearm is a deadly weapon. *Id.* at § 1.07(a)(17)(A). As indicted, the offense was a second degree felony punishable by confinement of not more than twenty years or less than two years and by a fine not to exceed $10,000. *Id.* at § 12.33(a).

issues, Appellant asserts the trial court erred by failing to grant his request for a jury charge instruction as to (1) a self-defense and (2) necessity. We reverse and remand.

BACKGROUND

Appellant and his former girlfriend, Kimberly, had a son together in 2010. After their relationship ended in March 2012, they entered into an informal visitation agreement whereby Appellant would contact Kimberly when he wanted visitation. The parties would meet and exchange possession of their son. Appellant would then return his son to her that evening or sometimes a few days later.

Towards the end of 2012, Kimberly was in a relationship with Kevin Drayton, the victim in the underlying case. Appellant and Kevin were not strangers to verbal altercations—face to face or by phone. On December 26, 2012, the child's birthday, Appellant asked for and was granted visitation. He picked the child up from Kimberly's apartment and agreed to return him later that day. According to Appellant, his son was not properly dressed for the cold weather which caused him concern.

During visitation, Appellant was potty training his son and discovered he had passed a ball bearing. He took him to the emergency room where an x-ray revealed a second metallic object still lodged in his intestines. He called Kimberly and informed her of the situation and asked for his son's Medicaid information. He also told her CPS and the police had been called and that he would not be relinquishing possession of his son. Appellant kept his son during the CPS investigation which eventually ruled out any neglect.

2

For approximately two weeks, Kimberly sent numerous text messages to Appellant asking to see her son. Kimberly's requests were refused. According to Appellant, during this time period, he received death threats by text messages from three separate numbers he could not identify but believed one of the numbers belonged to Kevin. Also during this time frame, Appellant had an attempted break-in at his apartment.

Hopeful that allowing Kimberly visitation would end the death threats, Appellant agreed to a meeting. They met in a grocery store parking lot during the evening hours of January 7, 2013. Appellant insisted they meet alone—without Kevin—and Kimberly acquiesced. Kimberly wanted her son returned, but Appellant intended for her to only visit with him. Once at the parking lot, they struggled for possession of the child and Appellant tried to take Kimberly's keys so she would not drive away with the child. At the moment, the child was not restrained in a car seat or seat belt. Unbeknownst to Appellant, Kevin was present at the location. Kevin, a larger man than Appellant, surprised him and stated something to the effect of "that's enough." Appellant, who testified he was scared, pulled a gun from his jacket and threatened Kevin to back away or he would die. Kevin complied and Appellant again attempted to take Kimberly's keys so she would not drive away with the child. Kevin then jumped Appellant from behind, wrestled him to the ground and disarmed him. During the scuffle, the gun fell from Appellant's grip and landed under his vehicle.

Patrol officers and an off-duty officer happened to be at a business across the street when they heard the fighting and responded. When they arrived at the scene,

3

Kimberly drove away with her son.[2]  The officers separated and handcuffed both parties until the gun could be located.  They interviewed two eyewitnesses, Kevin, and Appellant's current girlfriend, who had arrived in her own car during the scuffle.  Appellant was placed in a patrol car.  After statements were taken, Kevin and Appellant's girlfriend were released.  Appellant was arrested for aggravated assault and transported to jail.

Appellant's trial strategy was that he pulled his gun on Kevin to defend himself and that his conduct was justified.  During the charge conference, defense counsel asked for a self-defense instruction, although her emphasis was on a necessity instruction.  The trial court denied both defensive instructions.

Appellant contends by two issues that the trial court erred in denying his requests for these defensive jury instructions.  The State argues the trial court's ruling was proper, and if charge error exists, there is no showing of harm to Appellant.  Because both issues require similar analysis, we will review them simultaneously.

STANDARD OF REVIEW

We review a trial court's denial of a requested jury instruction under an abuse of discretion standard of review.  *Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004).  A trial court does not abuse its discretion when its decision is within the zone of reasonable disagreement.  *See Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  The denial of a defensive instruction is an abuse of discretion if the

---

[2] One of the officers instructed Kevin to call Kimberly and request that she return to the scene to answer questions.  Kimberly left her son nearby with a cousin and returned to the scene.

defensive theory is raised by the evidence from any source and a charge is properly requested. *Shaw v. State*, 243 S.W.3d 647, 662 (Tex. Crim. App. 2007).

JURY CHARGE ERROR

An appellate court should review a claim of charge error pursuant to the standards discussed in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Review is a two-step process. First, a reviewing court must determine whether charge error occurred. Secondly, the reviewing court must determine whether the error is harmless. Charge error requires reversal when a proper objection has been made and the reviewing court finds "some harm," i.e., error that is calculated to injure the rights of the defendant. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). If the court finds error that is not harmless, reversal is called for if the error has been properly preserved. *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (citing *Almanza*, 686 S.W.2d at 171).

JURY INSTRUCTIONS—DEFENSIVE ISSUES

A defendant is entitled, upon a timely request, to an instruction on any defensive issue raised by the evidence provided that (1) the defendant timely requests an instruction on that specific theory and (2) the evidence raises that issue. *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003). A defendant is entitled to an instruction on every defensive issue raised regardless of whether the evidence is strong, feeble, unimpeached or contradicted, and even when the trial court thinks that the testimony is not worthy of belief. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). This rule is designed to insure that the jury, not the judge, will decide the

5

relative credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991).

To determine whether a defense issue has evidentiary support, we review the record in the light most favorable to the defendant. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). Additionally, a defendant's testimony alone is sufficient to raise a defensive issue. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987) (op. on reh'g). In analyzing whether a defendant was entitled to an instruction, the issue is not the truth or credibility of the defendant's testimony; the issue is whether the jury should have been instructed to decide those questions under the applicable law. *Id.* at 808.

### SELF-DEFENSE

Self-defense is the use of force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *See* TEX. PENAL CODE ANN. § 9.31(a) (West 2011).[3] Entitlement to a self-defense instruction requires the defendant to admit the act alleged, including the culpable mental state, and produce evidence supporting the defense. *Juarez v. State*, 308 S.W.3d 398, 399 (Tex. Crim. App. 2010). However, even if the evidence raises a claim of self-defense, a trial court does not err by refusing submission of that issue if the evidence conclusively establishes one of the exceptions listed in section 9.31(b) (listing circumstances where the use of force is not justified). *Dyson v. State*, 672 S.W.2d 460, 463-65 (Tex. Crim. App. 1984). Here, the State

---

[3] All future references to "§" or "section" are to the Texas Penal Code Annotated (West 2011).

contends Appellant's use of force was not justified because it was in response to verbal provocation alone.  *See* § 9.31(b)(1).

## NECESSITY DEFENSE

Under the defense of necessity, unlawful conduct is justified if (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and (3) the legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.  *See* § 9.22.  To raise a necessity defense, a defendant admits violating the statute under which he is charged and then offers necessity as a justification which weighs against imposing a criminal punishment for the acts which violated the statute.  *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999).  Admission of the violation of a statute includes every element including the culpable mental state.  *Juarez*, 308 S.W.3d at 409.

## ANALYSIS

To be entitled to a defensive instruction pertaining to either self-defense or necessity, Appellant had to reasonably believe his conduct was "immediately necessary" to protect himself against a perceived threat of the use or attempted use of unlawful force by Kevin.  *See* § 9.31(a).  A "reasonable belief" is one that would be held by an ordinary and prudent person in the same circumstances as Appellant.  *Walters v.*

*State*, 247 S.W.3d 204, 213 (Tex. Crim. App. 2007).[4]  A necessity defense adds that the conduct be immediately necessary to avoid "imminent" harm.  "Imminent" has been defined as ready to take place, near at hand; impending; mediate rather than immediate; close rather than touching, on the point of happening; threatening; menacing; perilous.  *Devine v. State*, 786 S.W.2d 268, 270 (Tex. Crim. App. 1989) (citing various authorities including Black's Law Dictionary 676 (5th ed. 1979)).

As previously stated, in determining whether a defense issue has evidentiary support, we review the evidence in the light most favorable to the defendant.  Here, Appellant had served in the military from 1997 until he was honorably discharged in 2005, after receiving various service medals.  He attended Temple College with a goal of obtaining a business management degree.  He has a ten percent disability from his work in the military and has been diagnosed with PTSD, depression, personality disorder and alcohol dependency.

Appellant testified that when he and Kimberly first separated, their relationship was amicable but later became strained.  He first encountered Kevin when returning his son's diaper bag and car seat after a period of visitation.  Despite a few verbal confrontations between them, they did not really know each other.

As recited earlier, while Appellant was withholding possession of his son from Kimberly, he received death threats by text messages and a phone call from a man

---

[4] Under certain circumstances not applicable here, an actor's reasonable belief is presumed if the actor is not otherwise engaged in certain criminal activity.  *See* § 9.31(a)(3).  The State argues that based on the statute, Appellant was not entitled to a self-defense instruction because he was unlawfully carrying a weapon in violation of section 46.02, a Class A misdemeanor.  The State's argument is incorrect. Criminal activity eliminates a presumption of reasonableness; it does not extinguish the opportunity for a self-defense instruction.  *See Villarreal v. State*, No. PD-0332-13, __ S.W.3d __, 2015 Tex. Crim. App. LEXIS 136, at *26-29 (Tex. Crim. App. Feb. 4, 2015) (concluding statutory presumption of reasonableness inapplicable).

which he could not positively identify as Kevin. There was also an attempted break-in at his apartment during the same time frame.

When Appellant agreed to meet Kimberly, he conditioned the meeting on Kevin not accompanying her.[5] During trial, Appellant admitted he had consumed alcohol before the meeting. He further testified he saw Kevin "creeping up" on him from the corner of his eye. His testimony continued, "I was scared and I pulled a gun out." He then admitted threatening Appellant by saying: "back the fuck up because this ain't got nothing to do with you or somebody going to die tonight . . . ." After Kevin backed away, Appellant discontinued his encounter with Kevin and again tried to get Kimberly's keys so she would not drive away with their son. It was then that Kevin jumped Appellant from behind and the two struggled.

Although Appellant's girlfriend failed to show for trial, the patrol car videos played for the jury show her arriving at the scene and being detained and placed in a patrol car until the situation could be resolved. She is heard on the officer's microphone stating that when she arrived, Kevin had a hold of Appellant from behind and Kevin had the gun. The officer questioned her story as being uncorroborated because other witnesses had named Appellant as the person holding the gun.

Upon realizing that Kevin was being released and he was being arrested, Appellant became upset and agitated. He yelled profanities and accused Kevin of

---

[5] The State argues that Appellant was not entitled to a self-defense instruction because use of force is not justified under section 9.31(b)(5) when the actor is carrying a weapon in violation of section 46.05 and he seeks an explanation from or discussion with the other person about their differences. In its brief, the State asserts Appellant knew Kevin would be at the meeting. The testimony, however, shows that Kimberly agreed to Appellant's condition that Kevin not attend the meeting. There is no support in the record for the State's contention that Appellant knew Kevin would be at the meeting or that Appellant "sought an explanation from or discussion with" Kevin concerning their differences.

attacking him. He was also angry that his son, whom he believed at that time was being neglected, was being taken from him.

The officer who interviewed Kevin believed his version of events and relayed that to the other officer. The second officer asked who started the fight and questioned whether Kevin should be charged with disorderly conduct for his part in the scuffle. The first officer discounted the idea of charging Kevin with the following explanation: "when someone pushes on your old lady you gonna stand there and say no, cut it out?" As a result, Kevin was never charged with any offense arising out of the incident.

An eyewitness who was walking to his truck at the time observed Kevin arrive in the parking lot and get out of his car. He described Kevin as sprinting across the parking lot. Kevin's "sprinting" must have appeared menacing because the witness anticipated a fight was about to occur. Before any confrontation between Appellant and Kevin started, he got into his truck and began honking his horn to get everyone's attention in hopes of averting a fight.

Evidence which raises a defensive issue, regardless of its strength or source, justifies the submission of an instruction as to that defense. *Juarez*, 308 S.W.3d at 404-05. Even a minimum quantity of evidence is sufficient if the evidence presented would support an affirmative finding pertaining to that defense by a rational jury. *Shaw*, 243 S.W.3d at 657-58. Here, Appellant has a much smaller stature than Kevin.[6] He testified he pulled his gun because he was scared. He admitted to threatening Kevin

---

[6] The officer who detained and handcuffed Kevin commented he had "big old hands."

10

and stating "somebody going to die tonight."[7]   Given his strained relationship with his former girlfriend, his past encounters with Kevin, prior death threats, and the attempted break-in of his residence, it is not inconceivable that, at the time of the incident, Appellant reasonably believed Kevin's conduct posed an "imminent" threat to him. Furthermore, Kevin surprised Appellant by showing up for a meeting when he had been specifically asked to stay away.   Therefore, it is reasonable to conceive Appellant believed use of force was immediately necessary to protect himself when he was confronted by Kevin.   Given Appellant's testimony, his girlfriend's comments recorded on the patrol car video, the relative stature of each party, and the eyewitness's account concerning Kevin's "sprinting" across the parking lot, we believe a rational juror could have found Appellant reasonably believed harm was imminent and the use of force was reasonably necessary to protect himself from Kevin's use of force against him.   Viewing the evidence in the light most favorable to Appellant, we conclude the record supports Appellant's request for the submission of both defensive instructions.   Accordingly, the trial court abused its discretion by denying the requested instructions.   Finding error in the court's charge, we proceed to a harm analysis.

HARM ANALYSIS UNDER ALMANZA

When, as here, a defendant objects to the charge at trial, he will obtain relief if the record shows he suffered "some harm."   *Reeves*, 420 S.W.3d at 816.   A reviewing court is required to consider the following: (1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence and (4) other relevant factors

---

[7] The State urges that Appellant did not admit he violated a statute because he later testified he "didn't feel like [he] assaulted anybody."  This testimony merely presents a credibility issue because other evidence supports a finding that Appellant admitted each element of the offense.

present in the record. *Id.* This less-stringent standard still requires the reviewing court to find the defendant "suffered some actual, rather than merely theoretical, harm from the error." *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008).

(1) ENTIRE JURY CHARGE

In the underlying case, the charge contains an abstract as well as an application section. It sets forth and defines the elements for aggravated assault and also instructs the jury on the lesser-included offense of assault by threat. It does not, however, contain any defensive instructions, which we have concluded were raised by the evidence. The jury was not given the opportunity to decide the relative credibility of Appellant's defensive theories and whether to reject or apply them in this case. Therefore, we find the charge as presented to the jury weighs heavily in favor of finding that Appellant was harmed.

(2) ARGUMENTS OF COUNSEL

During its opening argument, the State explained the evidence would show that Appellant and Kimberly fought over possession of their son and Kevin intervened. The argument continued, "[Kevin] grabs the defendant to stop this physical tug of war . . . the defendant pulls a gun, points it at him and says you're going to die tonight." The State referred the jury to patrol car videos that would be presented and asked it to assess the credibility of the parties involved to determine what occurred that night. When presented, the patrol car video showed Appellant becoming upset, yelling profanities, and being in an agitated mood when he realized that Kevin was being released and he

12

was being arrested. The State wanted the jury to believe that Appellant's state of mind implicated him as the aggressor. However, Appellant testified he was upset and agitated because his son, whom he believed was being neglected, was being taken from him.

Closing arguments are not particularly informative—Appellant was denied defensive instructions during the charge conference so arguments did not reference self-defense or necessity. The State emphasized the offense of aggravated assault as opposed to the lesser offense of assault by threat and reminded the jury that Appellant admitted he exhibited a deadly weapon. Without any defensive instructions, defense counsel had no choice but to argue that Appellant did not intend to commit aggravated assault notwithstanding Appellant's admission of the offense during his trial testimony. Therefore, overall, counsel's arguments at trial weigh in favor of finding that Appellant suffered some harm.

### (3) ENTIRETY OF THE EVIDENCE

Self-defense and necessity were contested issues. Appellant testified he committed aggravated assault. He testified to his history with his former girlfriend and expressed his concern regarding his son's well-being. Even Kevin's testimony confirmed that concern. Additionally, a disinterested third-party eyewitness sensed a confrontation was imminent based solely upon Kevin's demeanor when he arrived at the parking lot. Finally, Appellant's and his girlfriend's testimony, credible or not, were alone sufficient to raise these defensive issues. Depriving Appellant of a defensive instruction and the opportunity for the jury to evaluate the credibility of his defensive theories weighs heavily in favor of a finding of some harm.

(4) OTHER RELEVANT EVIDENCE

Appellant claims that interviews conducted at the scene determined his fate without being given an opportunity to explain his conduct. He testified he was visibly upset and agitated in the patrol car video, not because he was an aggressive individual, but because his son was being taken from him. Kevin, on the other hand, was released without any culpability notwithstanding the fact that one officer questioned whether he should have been charged with disorderly conduct.

In sum, Appellant's rights were violated by being denied the opportunity to have the jury consider the credibility of a defensive issue, a vital aspect of his case. *Cf. Villarreal*, 2015 Tex. Crim. App. LEXIS 136, at *29-31 (deciding that the appellant was not egregiously harmed by omission of one of two alternative defenses). After evaluating the *Almanza* factors under the less-stringent standard of "some harm," we find that the record supports Appellant's contention that he was harmed by the trial court's refusal to include these defensive instructions in the charge. Issues one and two are sustained.

CONCLUSION

The trial court's judgment is reversed and the cause is remanded for further proceedings.

Patrick A. Pirtle
Justice

Do not publish.

14