

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00140-CR

ERIC MONTGOMERY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 22-F0178-005

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

MEMORANDUM OPINION

A Bowie County jury convicted Eric Montgomery of aggravated assault with a deadly weapon and possession of a deadly weapon in a penal institution. *See* TEX. PENAL CODE ANN. § 22.02 (Supp.), § 46.10.[1] On appeal, Montgomery argues that the evidence is insufficient to support the jury's rejection of his self-defense claim. Because we disagree, we affirm the trial court's judgment.

## I.  The Law of Self-Defense

"[A] person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." *Williamson v. State*, 589 S.W.3d 292, 296 (Tex. App.— Texarkana 2019, pet. ref'd) (alteration in original) (quoting TEX. PENAL CODE ANN. § 9.31(a)). Use of deadly force is only "justified if use of force would be justified under Section 9.31, and 'when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force.'" *Id.* (quoting TEX. PENAL CODE ANN. § 9.32(a)(2)(A)). The Texas Penal Code defines "[r]easonable belief" as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." *Id.* (quoting TEX. PENAL CODE ANN. § 1.07(a)(42)).

"Under certain circumstances, the actor's belief that deadly force was immediately necessary is presumed to be reasonable." *Id.* at 296–97. Some of these circumstances include when (1) the actor "knew or had reason to believe that the person against whom the deadly force

---

[1]The jury assessed a sentence of ten years' imprisonment for the aggravated assault and five years' imprisonment for possession of a deadly weapon, with the sentences to run concurrently.

2

was used" "was committing or attempting to commit" murder or sexual assault, (2) the actor "did not provoke the person against whom the force was used," and (3) the actor "was not . . . engaged in criminal activity, other than a Class C misdemeanor" or a traffic violation. TEX. PENAL CODE ANN. § 9.32(b).

## II.    The Evidence at Trial

The evidence at trial showed that Darrius Nichols and Montgomery were cellmates at the Telford Unit. Nichols testified that he decided to clean out his cell locker and placed his belongings, including a homemade knife, into a bag. Before discarding the bag, Nichols handed it to Montgomery in case he wanted to keep anything for himself. According to Nichols, Montgomery retrieved the knife and stabbed him in the chest. Nichols testified that he and Montgomery started fighting and that he was "stabbed a couple more times in the process of trying to get the knife out of [Montgomery's] hand." Nichols also said that he was not able to get the knife from Montgomery.

Festus Ofeinmen, a correctional officer for the Texas Department of Criminal Justice, responded to the commotion caused by the fight. Ofeinmen testified that Montgomery and Nichols admitted that they were fighting. Ofeinmen and William Buttram, an investigator for the Office of the Inspector General, both testified that Montgomery surrendered the knife to correctional officers. Buttram said that the knife was capable of causing death or serious bodily injury.

Buttram visited Nichols in the infirmary and photographed his multiple stab wounds, which were shown to the jury. Nichols was stabbed in the chest, head, neck, shoulder, arms

3

abdomen, and back. According to Buttram, the two wounds to Nichols's back indicated that he was trying to get away from Montgomery. Buttram also visited Montgomery in the infirmary, but both Buttram and Nichols testified that Montgomery had no injuries. Nichols, who had testified that he and Montgomery had no major issues before the incident, opined that the attack happened because Montgomery "was on drugs . . . [that] had him tripping." Nichols testified that he had no weapon and did not try to assault Montgomery.

Buttram testified that he saw nothing that indicated Montgomery acted in self-defense. Even so, to support his claim of self-defense, Montgomery testified to the following:

> [Nichols] brought the weapon into the cell, he told me he was gonna get rid of the knife. He made an attempt to get rid of the knife. He turned around and told me that he got rid of the weapon and when I looked up[,] he was walking behind me with a knife. And I took the knife away from him and that's the incident . . . .

Montgomery testified that he had no issues with Nichols before the incident but explained that he felt threatened after he saw Nichols with the knife, which Nichols claimed he had thrown away. Montgomery said that Nichols was much larger in stature and that, as a result, he kept stabbing Nichols because he feared what would happen if Nichols regained control of the knife. Montgomery admitted that he turned the knife over to responding officers.

## III.     Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson*, 589 S.W.3d at 297 (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979))). "Our rigorous [legal sufficiency] review focuses on the

4

quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19)); *see Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

"In drawing reasonable inferences, the jury 'may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life.'" *Id.* (quoting *Duren v. State*, 87 S.W.3d 719, 724 (Tex. App.—Texarkana 2002, pet. struck) (citing *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring))). "The jury is also the sole judge of the credibility of the witnesses and the weight to be given their testimony and may 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014) (alteration in original)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

"It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13).

5

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In evaluating a claim of insufficient evidence in the context of a self-defense issue, we apply the general sufficiency review principles set forth above, in conjunction with sufficiency review principles specific to self-defense." *Id.* (citing *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018)). "When there is a claim of self-defense . . . to justify use of force or deadly force against another, 'the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues.'" *Id.* (quoting *Braughton*, 569 S.W.3d at 608 (citing *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003))). "The defendant is required to produce 'some evidence that would support a rational finding in his favor on the defensive issue.'" *Id.* (quoting *Braughton*, 569 S.W.3d at 608). "The State is not required to produce evidence; rather, its burden of persuasion only requires 'that the State prove its case beyond a reasonable doubt.'" *Id.* (quoting *Braughton*, 569 S.W.3d at 608). As a result,

> [i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt.

6

*Id.* (alterations in original) (quoting *Braughton*, 569 S.W.3d at 609). "Further, as with the general sufficiency principles, the trier of fact is the sole judge of the credibility of defensive evidence, and it is free to accept it or reject it." *Id.* (citing *Braughton*, 569 S.W.3d at 609). "Self-defense is a fact issue that is determined by the jury, and '[a] jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory.'" *Id.* (alteration in original) (quoting *Braughton*, 569 S.W.3d at 609).

## IV. Analysis

Under the indictment for aggravated assault, the State was required to prove that Montgomery, while using or exhibiting a deadly weapon, "intentionally, knowingly, [or] recklessly cause[d] bodily injury to DARRIUS NICHOLS by striking [him] about the body with sharpened metal." *See* TEX. PENAL CODE ANN. § 22.02. Under the indictment for deadly weapon in a penal institution, the State had to prove that, while confined in the Telford Unit, Montgomery intentionally or knowingly possessed sharpened metal that was capable of causing death or serious bodily injury in the manner of its use or intended use. *See* TEX. PENAL CODE ANN. § 1.07(a)(17) (Supp.), § 46.10.

Here, Buttram testified that the knife was capable of causing serious bodily injury or death. Nichols described the attack in detail, and Montgomery admitted that he used the knife to stab Nichols multiple times while housed in the Telford Unit. This evidence alone was sufficient to establish the elements of aggravated assault and deadly weapon in a penal institution. Even so, Montgomery argues that the jury's rejection of his claim of self-defense was not supported by the record. We disagree.

7

The jury heard two version of events. One from Nichols and another from Montgomery. As the triers of fact, the jury was free to reject Montgomery's self-serving version in favor of Nichols's testimony that he had no weapon when he was attacked by Montgomery, who appeared to be on drugs. The rejection of Montgomery's self-defense claim was supported by Buttram's testimony that Montgomery suffered no injuries due to the melee and that Buttram's investigation revealed no signs of self-defense.

Moreover, even presuming that Montgomery's initial use of deadly force was reasonable, the use of deadly force was justified "to the degree [Montgomery] reasonably believe[d] the deadly force [was] *immediately necessary*" to protect himself from Nichols's use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a)(2) (emphasis added). The jury was free to determine that, after Nichols was initially stabbed and without any weapon, Nichols no longer posed any deadly threat to Montgomery, who continued to stab Nichols. "Self-defense implies defensive and not offensive acts. When the acts of an accused cease to be defensive and take on the offensive, then he becomes the aggressor and is no longer acting in self-defense." *Witty v. State*, 203 S.W.2d 212, 218 (Tex. Crim. App. 1947); *see Gibson v. State*, 202 S.W.2d 236, 237 (Tex. Crim. App. 1947) (The acts constituting self-defense "must not exceed the bounds of defense and prevention. There must be an apparent necessity to ward off by force an unlawful act. It is a right based upon necessity."); *see also Lozano v. State*, 636 S.W.3d 25, 34 (Tex. Crim. App. 2021) (noting that defendant "might have shot [victim] once in self-defense, then continued shooting even though he knew [the victim] was no longer a threat"). Because of

Nichols's multiple wounds, including two wounds to the back, the jury was free to find that Montgomery became the aggressor.

In sum, we conclude that the jury's rejection of Montgomery's self-defense claim was supported by the evidence. As a result, we overrule Montgomery's sole point of error.

## IV. Conclusion

We affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     December 7, 2023
Date Decided:       January 10, 2024

Do Not Publish